**June Martha MARTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–83–118 CR.

Court of Appeals of Texas,
Beaumont.

Sept. 28, 1988.

On State's Motion for
Rehearing Nov. 2, 1988.

Rehearing Denied Nov. 2, 1988.

Ronald H. Tonkin, Houston, for appellant.

Peter Speers, III, Dist. Atty., Thomas D. Glenn, Asst. Dist. Atty., Conroe, for appellee.

## OPINION ON REMAND

DIES, Chief Justice.

This is an appeal from Appellant's conviction for the offense of possession of a controlled substance. A jury found Appellant guilty of possessing methamphetamine, and the trial court assessed punishment at fifteen years and six months detention in the Texas Department of Corrections and a fine of $5,000. Upon original submission, this court reversed Appellant's conviction and ordered a new trial because the record did not contain proper waivers of the right to trial by jury as to the punishment phase of the trial. *Martin v. State*, No. 09–83–118 CR (Tex.App.—Beaumont May 23, 1984). The Court of Criminal Appeals later reversed the judgment of this court and remanded the cause to this court for consideration of Appellant's remaining points of error. *Martin v. State*, 753 S.W.2d 384 (Tex.Crim.App.1988).

Appellant's first two points of error attack the admissibility of certain packages of methamphetamine found in a purse in Appellant's immediate possession and in another purse in her automobile. Appellant argues that this evidence was the product of illegal searches so that the admission of such evidence violated her rights

under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Texas Constitution.

On October 25, 1981, Montgomery County Sheriff's deputies executed a search warrant for the private residence of Ronald Yarbrough (Appellant's son-in-law). This warrant authorized the officers to search the residence, including all "outbuildings, structures, and vehicles on the premises." It also ordered the arrest of "Ron Yarbrough ... and persons whose names and identities are unknown to affiant." The affiant was Deputy Braune of the Montgomery County Sheriff's office. Braune had been investigating Yarbrough, Appellant, and Appellant's husband for several weeks prior to obtaining the search and arrest warrant. Braune's investigation was concerned with the possibility that these three individuals were involved in the sale and possession of methamphetamine. The affidavit in support of the warrant stated that a confidential informant had told Sergeant Fluellen of the Montgomery County Sheriff's office that Ron Yarbrough was in possession of methamphetamine at his residence.

The officers who executed the warrant had been told by the confidential informant that Yarbrough kept firearms on the premises and that he was "trigger-happy." As a team of five (or possibly six) officers drove to Yarbrough's residence to execute the warrant, they saw Ron Yarbrough driving past in the opposite direction. On authority of the warrant, Braune had Yarbrough stopped and arrested. Then Braune sent Fluellen and Deputy Polk to Yarbrough's residence to execute the warrant.

Fluellen, who was in plain clothes, gained entry to the residence by saying he was interested in purchasing some firewood which Yarbrough had for sale. Once inside the house, Fluellen noticed Mrs. Yarbrough sitting on a chair to his right. Appellant was seated at one end of a couch to his left, along with her grandson and another teenage boy. Ron Yarbrough's brother was also in the room. Shortly after entering the house, Fluellen pulled out his pistol, identified himself as a police officer, and instructed all the people present to remain where they were. He informed them that he had a search warrant for the premises. Deputy Braune entered shortly thereafter and informed the people present of their "Miranda" rights.

Deputy Braune then told everyone present that he would first conduct a search for weapons. As Braune was searching Mrs. Yarbrough's (Appellant's daughter's) purse for weapons, he saw Appellant pick up her large purse which was beside her on the couch and place it in her lap as if she were trying to conceal something. Fearing that she might have a weapon in the purse, Braune asked Appellant to give him the purse and Deputy Polk took it from her. Polk opened the purse and saw two tinfoil packages, and the officers could then smell a strong odor which they had come to associate with methamphetamine through their experience as narcotics officers. The tinfoil packages were opened and were found to contain plastic bags containing a white, powdery substance. Braune also found Appellant's driver's license in this purse. Braune took possession of the packages and the white, powdery substance and informed Appellant that she was under arrest for possession of methamphetamine.

Approximately one hour later, Braune directed other officers to search all the vehicles on the premises, including a maroon Chrysler Cordoba which Braune believed to be owned by Appellant and her husband. On the front seat of the Cordoba, Fluellen found another purse which contained a package containing a small amount of methamphetamine and over $7,000 in cash. After a hearing, the trial court overruled Appellant's motion to suppress all the above-mentioned items, and each item was introduced in evidence during Appellant's trial.

### The Search of Appellant's Purse in the Residence

As regards the two packages found in the purse in Appellant's immediate

possession, Appellant argues that this was a warrantless arrest and search. Therefore, Appellant argues, the State has the burden of proving that the arrest and search were legal. The State argues that the warrant authorized Appellant's arrest because it ordered the arrest of "persons whose names and identities are unknown to affiant." Where the name of a person is unknown, it is sufficient that the warrant describe him and, if his identity is also unknown, it is sufficient to aver that the premises are under the control of parties unknown to the affiant. *Lippert v. State,* 664 S.W.2d 712, 716 (Tex.Crim.App.1984). Here, neither the affidavit nor the warrant stated that the parties whose identities were unknown to Deputy Braune were in control of Yarbrough's residence. Furthermore, it is conclusively established that Braune knew both the name and identity of Appellant prior to obtaining the warrant for the search of Yarbrough's residence. Therefore, the language relied upon by the State could not have specifically authorized Appellant's arrest.

The State also argues that an officer executing a valid search warrant has the right to search any person found on the premises during the execution of the warrant. The State relies on *Rice v. State,* 548 S.W.2d 725 (Tex.Crim.App.1977) and *Hernandez v. State,* 437 S.W.2d 831 (Tex.Crim. App.1968), *cert. denied,* 395 U.S. 987, 89 S.Ct. 2148, 23 L.Ed.2d 775 (1969). The United States Supreme Court has held that the mere fact that a person is found on the premises where a valid search warrant is executed does not authorize police to detain or search a person who is not an "occupant" of the premises. *See Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) and *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *see also, Lippert v. State,* 664 S.W. 2d at 717–720. Both *Ybarra* and *Summers* were decided prior to the execution of the warrant in question. It is also clear that the word "occupant" as used by the Supreme Court in *Summers* does not include a mere visitor. *See Lippert,* 664 S.W.2d at 720. The record does not establish that the officers who executed the warrant believed Appellant was directly associated with the premises. Rather, the record tends to show they knew Appellant was visiting Yarbrough's residence when the warrant was executed. Therefore, the warrant did not, either directly or indirectly, authorize the arrest, detention, or search of Appellant.

■ The State also argues that the search of Appellant's purse was justified because the officers noticed that she was attempting to conceal something in her purse when she placed it in her lap. We note that under Deputy Braune's version of these events, this gesture placed him in fear that she might be armed. Furthermore, the gesture was made immediately after Braune announced he was first going to search for weapons. Sergeant Fluellen's version of the events was that the gesture was made as an immediate response to his actions in identifying himself as a narcotics officer and ordering everyone to remain where they were.

While it is undisputed that Appellant was at least detained by the officers prior to placing her purse in her lap, the two officers' slightly differing versions of the events casts, we think, very different light upon the reasonableness of Braune's belief that Appellant might have been armed. If Fluellen's version is accepted, Appellant was apparently reacting with surprise to his actions of drawing a pistol and ordering everyone to "freeze." Such a reaction would seem as indicative of innocence as of guilt. *See Daniels v. State,* 718 S.W.2d 702 (Tex.Crim.App.1986). However, if Braune's testimony is accepted as true, Appellant apparently reached for her purse as an immediate reaction to Braune's act of announcing they were going to search for weapons, and his search of Mrs. Yarbrough's purse. We hold that the testimony of Deputy Braune shows sufficient particular facts from which he reasonably inferred that Appellant was armed and dangerous. *See Ybarra,* 444 U.S. at 92–93, 100 S.Ct. at 342–343; *Sibron v. New York,* 392 U.S. 40, 60, 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917 (1968); *see also, Manry v. State,* 621 S.W.2d 619, 622–623 (Tex.Crim.

App.1981). Therefore, we hold that the methamphetamine found in the purse in Appellant's immediate possession was admissible.

### The Search of Appellant's Car

■ Appellant argues that the items seized from her car should have been suppressed because the affidavit in support of the warrant stated no facts showing probable cause to believe it contained methamphetamine. The affidavit states that a reliable and credible informant told officer Fluellen that Yarbrough had concealed methamphetamine in "his" vehicles. The affidavit contains no information indicating that methamphetamine was to be found in vehicles belonging to others which might be found on the premises. Therefore, the warrant was not issued upon probable cause insofar as it authorized the search of "all ... vehicles on the premises." The record clearly shows that Deputy Braune knew that the Chrysler Cordoba in question belonged to Appellant and not to Yarbrough.

■ However, Appellant attacks this search upon the sole grounds that it violated her rights under the United States and Texas Constitutions. Appellant does not complain on appeal that the admission of the methamphetamine and other items found in her car violated her rights under the exclusionary rule set out in the Texas Code of Criminal Procedure as it existed when the evidence was seized. See Art. 38.23, Texas Code of Criminal Procedure Act, ch. 722, sec. 1, 1965 Tex.Gen. Laws 317, 470, amended by ch. 546, sec. 1, 1987 Tex.Gen. Laws 2207–2208.[1] Where an appellant fails to urge Article 38.23 as a ground for suppressing evidence, this court will consider the admissibility of the evidence only under the standards of the 4th Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution. Hicks v. State, 753 S.W.2d 419 (Tex.App.—Beaumont 1988, no pet.). Both the Federal and Texas Constitutions

include an exception to the exclusionary rule where police officers act in good faith reliance upon a warrant issued by a neutral magistrate. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Hicks v. State, 753 S.W.2d 419 (Tex.App.—Beaumont 1988, no pet.). In the present case, it is undisputed that the officers searched Appellant's car in good faith reliance upon the warrant, and that the warrant was issued by a neutral magistrate. Therefore, the exclusionary rule is not applicable to the search of Appellant's car. For these reasons, Appellant's first and second points of error are overruled.

### Admission of the Money Found in Appellant's Car

By her fourteenth point of error, Appellant urges that the trial court erred in admitting in evidence the money and a photograph thereof found in a purse in the front seat of her car because such evidence was irrelevant and its introduction was highly prejudicial. Appellant argues that the $7,000 was introduced solely to give the jury the impression that Appellant was a methamphetamine dealer. Since Appellant was charged with possession and not delivery of methamphetamine, she argues that the evidence was irrelevant. The State argues that the money was admissible as part of the "res gestae" of the offense and was, therefore, admissible.

■ Evidence which tends to show commission of an extraneous offense is admissible under the "res gestae" doctrine only where the extraneous offense is relevant to a material issue in the present case and its relevancy value is more probative than prejudicial. Mann v. State, 718 S.W.2d 741, 743 (Tex.Crim.App.1986), cert. denied 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). In a prosecution for possession of methamphetamine, evidence that the accused has previously sold methamphetamine is evidence of an extraneous offense. See Arnott v. State, 498 S.W.2d 166, 176 (Tex.Crim.App.1973). Since the only infer-

---

1. The Legislature amended Article 38.23 to include a "good faith" exception which is to apply only to those searches or seizures occurring on or after September 1, 1987, the effective date of the amendment.

ence to be drawn from introduction of the money was that Appellant was dealing in narcotics, we conclude that the money was introduced in order to show an extraneous offense by Appellant.[2] *See Arnott*, 498 S.W.2d at 176. Therefore, we are faced with the question of whether such an inference is relevant in a prosecution for possession of methamphetamine and, if so, whether such evidence should be excluded under the test stated in *Mann*, 718 S.W.2d at 743.

 Knowledge or criminal intent is an essential element of the offense of possession of a narcotic drug. *Arnott*, 498 S.W.2d at 176. Therefore, evidence which tends to show that the accused was aware that the controlled substance was contraband is a relevant part of the State's case in chief. *Id.* Evidence that the accused has previously sold the controlled substance, possession of which he is presently charged with, is of probative value in establishing such knowledge or intent. *Id.* The fact that such evidence tends to show another crime is not objectionable where the evidence tends to prove any material fact in the case being tried. *Arnott*, 498 S.W.2d at 177. Therefore, the evidence of which Appellant now complains would have been admissible to show knowledge. Even so, some connection between the money and Appellant must be shown. *See Arnott, id.* There was no evidence that the black bag in which a small amount of methamphetamine and the money were found was even in the car when Appellant arrived at the Yarbrough residence. Police officers testified that the driver's window was open when they arrived and that persons other than Appellant may have had access to the vehicle. In addition, there was nothing which identified the bag as belonging to Appellant. This being the case, there is nothing in the record affirmatively linking Appellant to the black bag or its contents, including the money. *See Martin v. State*, 753 S.W.2d 384 (Tex.Crim.App.1988). Therefore, the money was not admissible to establish Appellant's knowledge or intent,

in light of the prejudicial nature of the evidence. *See Arnott*, 498 S.W.2d at 177.

The State argues that the money was admissible because it is part of the "res gestae" of the offense. While we tend to agree with this proposition, our inquiry must not end there. *See Mann*, 718 S.W.2d at 743. Since the evidence was not admissible to show knowledge, the only remaining purpose which might be served by such evidence would be to allow the jury to consider all the circumstances surrounding the alleged offense. In determining whether prejudicial impact of such evidence outweighs its probative value, such evidence is rarely held inadmissible. *Mann*, 718 S.W.2d at 744. However, we believe that the jury would not have been greatly hindered in its consideration of this case had the money not been introduced. On the other hand, it is obvious that one who is charged with possessing a controlled substance is greatly prejudiced by the introduction of evidence which indicates he is a drug dealer.

The State relies upon *Beeler v. State*, 374 S.W.2d 237 (Tex.Crim.App.), *cert denied*, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 51 (1964), and *Miller v. State*, 469 S.W.2d 180 (Tex.Crim.App.1971), as authority that the money was admissible because it was found in the same place as the methamphetamine. However, these cases are distinguished by the fact that neither *Beeler* or *Miller* involved "res gestae" evidence which tended to show that the person accused of illegally possessing a drug was also a drug dealer. We believe that the prejudicial impact of evidence that the accused is a drug dealer is far greater than evidence showing that the accused also possessed other illicit drugs. We hold that the trial court abused its discretion in allowing the introduction of the money in evidence because the probative value of the evidence was clearly outweighed by the prejudicial impact of such evidence. Appellant's fourteenth point of error is sustained.

After a thorough review of the entire record, we find that Appellant's remaining

---

2. This conclusion is further substantiated by the fact that the prosecutor, in his closing argument

in the guilt-innocence phase, asked the jury to speculate as to where the money came from.

points of error are all without merit and they are hereby overruled.

This cause is remanded to the trial court.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, dissenting.

The majority opinion reverses the judgment on the accused's Ground of Error Number Fourteen. I respectfully dissent from that reversal based on that ground of error. That ground of error avers that the admission of State's Exhibit No. 3, which was a photograph, and State's Exhibit No. 4, which was money, were immaterial, irrelevant and the introduction thereof was highly prejudicial.

First, I would point out that this alleged ground of error is not properly briefed or argued. No authority is cited. Next, I would point out that the only argument set forth, under this ground of error is one sentence taken from the argument of the prosecution. The sentence is:

"I think I'll leave it up to you to consider what that cash is doing in there and where it came from."

The so-called argument does not comply or comport with Ground of Error Number Fourteen. The closing argument of the State consists of a number of pages. No objection was made to the above quoted sentence. The Appellant fails to cite any case, or other authority, to support his argument. I think that this ground of error presents nothing for review.

In *Corker v. State*, 691 S.W.2d 744 (Tex. App.—Dallas 1985, no pet.), the court wrote at 746:

"... For two reasons, this ground of error presents nothing for review. First, appellant cites no authority for this proposition as required by TEX.CODE CRIM. PROC.ANN. art. 40.09(9) (Vernon Supp. 1985). *McWherter v. State*, 607 S.W.2d 531, 536 (Tex.Crim.App.1980)...."

The *Corker* case boldly and unequivocally holds that where the appellant cites no authority for his ground of error proposition then nothing is presented for review.

In *McWherter v. State*, 607 S.W.2d 531 (Tex.Crim.App.1980), the court wrote, at 536, as follows:

"The appellant does not brief the ground of error, does not cite any authority and merely calls the matter to our attention. The brief does not comply with Article 40.09, sec. 9, V.A.C.C.P., and presents nothing for review...."

It must be remembered that Lloyd Dale Martin and his wife, Martha June Martin [sometimes called "June Martha Martin"], were tried together. It is clear to me that the argument complained of was directed against Lloyd Dale Martin and, from a careful reading of the entirety of the arguments, it is clear that the argument was not directed against Martha June Martin.

Furthermore, the State had a right, and a duty, in my opinion, to introduce these exhibits in order to carry its burden of proof against Lloyd Dale Martin.

I would hold that the State had a right to make this argument, which was directed against Lloyd, under the authority of *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim. App.1973)

The charge against Martha June Martin was that she did, intentionally and knowingly, possess a controlled substance, to-wit: methamphetamine. The record before us definitely demonstrates that Martha June Martin had in her possession a rather large bag or purse. This purse was placed beside her as she was sitting on a sofa or divan. Almost immediately after the law enforcement officer entered the room in which Martha June Martin was located, she grabbed this purse from her side and put it in her lap.

This was done in a suspicious and furtive manner. The officer, under the facts, had a right to examine this rather large purse to search for weapons in order to protect his life. The officer also had a right to preserve contraband and evidence. Immediately upon opening the large purse, a rather large bag containing methamphetamine was observed, located in the very upper part of Martha June's purse. This purse, containing the contraband, was located on her lap and she was clutching and

protecting the purse and its contents in such a mode or manner so as to invite the examination of the same by an enforcement officer. A search warrant existed. The record reflects that there had been a search warrant issued to search the house of one Ron Yarbrough, on Sweetgum Lane, in Conroe, Montgomery County. Martha June Martin was in the Yarbrough's house.

The officers had to act quickly because they were under a duty, acting, of course, in good faith, to prevent the destruction of relevant evidence, such as contraband, narcotics or constrolled substances, because this kind of evidence can be easily destroyed or removed by flushing the same down a toilet or by similar action. Mrs. Martin definitely acted as if she was trying to conceal her purse or its contents. When her purse was opened, immediately a strong, distinctive odor was noticed. This odor was definitely recognized as the strong, pungent odor of methamphetamine. The expert chemist who testified swore that methamphetamine gave off a definite, distinctive, strong, pungent odor. The evidence glaringly shows that the officers actually recovered the contraband directly from the person of Martha June Martin.

Again, it should be stressed that when the one sentence argument was spoken by the State's attorney, there was absolutely no objection made to it. There was no motion to strike that sentence. There was no motion to disregard the one sentence. There was no motion for a mistrial. The busy, diligent trial judge had absolutely no chance to pass upon that one sentence.

I think the evidence in this case is overwhelming against Martha June Martin. I think that this is a correct and accurate summation of the facts taken from the argument of Texas:

"I think, from the evidence, you're not going to have any problem finding June Martha Martin guilty of the offense of possession of methamphetamine. You heard all the evidence presented showing that she had this large bag, nearly two ounces of *methamphetamine sitting right on top of her purse which was right next to her or on her lap at the*

*different times material to the events we're talking about here. She had the stuff in her hands. If that's not possession, there's no such thing as possession.*

"There is a little bit different case which I will get to in a minute with reference to Mr. Martin...." (Emphasis added)

I have reread *Vernon Lee Rose v. State,* the OPINION ON COURT'S OWN MOTION FOR REHEARING, authored by Judge Judge Campbell, delivered June 15, 1988, 752 S.W.2d 529 (Tex.Cr.App.1987). (Opinion on Rehearing, 752 S.W.2d 552), the relevant part of which reads as follows:

"Tex.R.App.Pro. 81(b)(2) provides the general harmless error test to be applied by appellate courts in criminal cases.

"If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Tex.R.App.Pro. 81(b)(2). This rule has been applied in a variety of contexts,[5] and it has been specifically applied to the denial of state and federal constitutional rights. *Erwin v. State,* 729 S.W.2d 709 (Tex.Cr.App.1987) (compulsory process for defendant). Because there is no countervailing procedural rule or statutory provision, the harm analysis codified in Rule 81(b)(2) is applicable to the error in this case."

---

"[5]*Murphy v. State,* (Tex.Cr.App.1988) (Motion for rehearing pending) (evidence of extraneous bad acts); *Stahl v. State,* 749 S.W.2d 826 (Tex. Cr.App.1988) (improper jury argument); *Bennett v. State,* 742 S.W.2d 664 (Tex.Cr.App.1987) (appointment of psychiatrist to examine defendant solely for the purpose of determining future dangerousness[) ]."

In my opinion, the immediate, above quote applies to the appeal of Mrs. Martin, if any error has been shown. I would vote to affirm her conviction.

## OPINION ON STATE'S MOTION FOR REHEARING

DIES, Chief Justice.

On September 28, 1988, a majority of this court issued an opinion reversing Appellant's conviction. In that opinion, we held that the introduction of $7,000.00 in cash found in a purse in Appellant's car was erroneous. The State filed its motion for rehearing on October 13, 1988, raising for the first time three matters it had not urged in its original brief filed over five years prior to its motion for rehearing.

First, the State argues that Appellant's point of error concerning the introduction of the money in evidence was not properly briefed and, therefore, presents nothing for review. Secondly, the State argues that Appellant did not preserve the error complained of by timely, specific objection in the trial court. Thirdly, the State argues that if the trial court erred in admitting the money in evidence, such error was harmless in light of the other evidence of Appellant's guilt. The primary purpose of a motion for rehearing in its usual context is to request this court to reconsider its original opinion on the grounds initially presented in the movant's original brief. See Gambill v. State, 692 S.W.2d 106 (Tex. Crim.App.1985). In its per curiam opinion denying Appellant's motion for rehearing in Gambill, the Court of Criminal Appeals stated the following:

> "The rules do not authorize a movant for rehearing unilaterally and gratuitously to introduce for the first time in a motion for rehearing a new ground for review, albeit one that may have been determined by the court of appeals. Belatedly to present new grounds in such piecemeal fashion is inimical to rights of an opposing party and valid interests of this Court in orderly procedure and judicial economy."

692 S.W.2d at 107.

Once Appellant had filed her original brief in this case, the State had every opportunity to raise such matters in its brief, but failed to do so. Appellants are not allowed to raise for the first time on motion for rehearing new grounds for reversal of a conviction, and we see no reason why the rules should be less stringent when it is the State which wishes to propose new grounds for affirmance of a conviction. Therefore, the above-mentioned grounds for rehearing are denied.

The State also argues that this court should have applied the test set out in TEX.R.CRIM.EVID. 403 in evaluating the admissibility of evidence in question rather than the test set out in Mann v. State, 718 S.W.2d 741, 743 (Tex.Crim.App.1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). The Texas Rules of Criminal Evidence did not become effective until September 1, 1986; therefore, the State's argument is without merit.

The State further argues that the opinion of the majority of this court ignored the fact that this case involves the joint trial of Appellant and her husband, Lloyd Dale Martin. The State argues that, as to Lloyd Martin, the probative value of the cash found in the car was greater since he was not found to have any methamphetamine in his immediate possession while the drug was found in June Martin's purse which she held in her lap. With this argument, we cannot agree.

During the guilt phase of the trial no evidence was admitted to sufficiently link either Appellant or her husband to the money found in their car. Therefore, the money was no more admissible against Lloyd Martin than it was against June Martin. See Arnott v. State, 498 S.W.2d 166, 177 (Tex.Crim.App.1973). The probative worth of the money was very slight because no such connection between the Martins and the money was shown. As stated in our opinion on remand, we believe the potential for prejudicial impact of such evidence was extremely high. Therefore, at the guilt phase of the trial, the money was erroneously admitted into evidence as against either of the defendants. As a result, contrary to the State's argument, June Martha Martin did not fail to preserve such error by not requesting an instruction limiting the jury's consideration of the money to Lloyd Martin only. For the fore-

going reasons, the State's motion for rehearing is denied.

Motion for rehearing denied.