

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00247-CR

Anthony Michael **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2024CR007424
Honorable Joel Perez, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: February 25, 2026

AFFIRMED

Appellant Anthony Michael Martinez pled no contest to one count of online solicitation of a minor for sexual conduct. As part of his plea, Martinez reserved the right to appeal the trial court's denial of his motion to suppress. Finding no reversible error, we affirm.

BACKGROUND

In July 2024, Martinez was indicted on one count of online solicitation of a minor for sexual conduct. In September 2024, Martinez filed a motion to suppress, arguing his arrest and the search of his vehicle were illegal and, therefore, the evidence obtained as a result should be suppressed.

A hearing on Martinez's motion was held in December 2024. The State's first witness was San Antonio Police Officer Patience Markich. Markich testified that she previously worked with the Human Exploitation Unit. In her duties for the unit, Markich would pose as a minor on social media by using her own pictures from when she was a teenager. In this case, Markich testified that she posed as a fifteen-year-old on the platform MocoSpace under the username "Prty13." After Markich created the online persona, a person with the username "Samcman" messaged Prty13 and started a conversation in August 2023. Markich, as Prty13, responded and told Samcman she was fifteen even though her profile indicated she was nineteen. The messages entered into evidence during the hearing reveal that in exchange for "some tender loving in discretion [*sic*]," Samcman offered to be fifteen-year-old Prty13's "sugar daddy" and to take her shopping, buy her gifts, and provide a $500 weekly allowance. As the conversation continued, Samcman asked Prty13 to meet to perform sexual acts.[1]

Eventually, Samcman agreed to meet Prty13 during the school lunch period on October 25, 2023. Samcman told Prty13 that he would pick her up at a specific gas station near her school, and he specifically described the color and type of vehicle he would be driving—a white SUV. Upon the request of Prty13, Samcman agreed to bring Prty13 a specific Whataburger order—"#1plain and dry [hamburger] with cheese, [and a] diet coke." Despite the meeting being arranged, the meeting did not take place that day.

---

[1] At around this time in the online conversation, Detective Robert Torres took over the communication on the Prty13 profile.

The following day, October 26, 2023, Samcman messaged Prty13, apologized for not being able to meet the day before, and asked again to meet during the school lunch period. Prty13 told Samcman to bring Whataburger again and to let her know when he had arrived. Detectives, including Detective Robert Torres, were stationed near the gas station where Samcman told Prty13 he would pick her up, and officers were dispatched to make an arrest when the time came.

Soon thereafter, Samcman messaged Prty 13, saying he was at the gas station filling up his vehicle. Torres instructed two officers to arrest a man pumping gas into a white SUV—Martinez— which, Torres testified, was the only white SUV at the gas station filling pumps. One officer approached the white SUV from the rear, the other from the front. As the officer approaches the front of the vehicle, his body camera footage shows the driver's side door is open, and inside, sitting in the center console unobstructed, is what appears to be a Whataburger bag, and, below in the cupholder, a Whataburger cup.

Additionally, footage from Torres's body-worn camera, admitted into evidence, shows him approaching the white SUV while the officers are arresting Martinez and asking for the now closed and locked white SUV door to be opened. Torres can then be seen reaching into the white SUV and grabbing the Whataburger bag and cup. Torres testified that the search of Martinez's white SUV was conducted incident to arrest, and that inside was a Whataburger bag containing a plain hamburger, and that Diet Coke was in the cup. One of the officers who effectuated the arrest testified that the Whataburger bag was in plain view when he approached the white SUV and that his report indicates the search was an inventory of the vehicle. However, the officer acknowledged that Torres viewed the search as incident to arrest.

Additionally, when Torres was questioned on the basis for his probable cause to arrest Martinez, he testified that probable cause to make the arrest was made based on a totality of the

circumstances, which were, "The Whataburger bag was in the console which was in plain view, the white SUV filling up, the only white SUV I saw there at that time filling up, the location which was discussed prior at the [gas station] at that intersection. Just the totality of everything." Torres also acknowledged that: although Samcman stated a specific vehicle type and color and that a specific Whataburger request was made on October 25, no such information was shared, nor was a specific Whataburger order requested, on the day of the arrest, October 26; and that he did not know the true identity of Samcman when the arrest was made as it is common for individuals to hide their true identity online.

The trial court denied Martinez's motion to suppress. Martinez pled no contest to one count of online solicitation of a minor for sexual conduct, while reserving his right to appeal the denial of his motion to suppress. The trial court sentenced Martinez to ten years deferred adjudication. This appeal followed.

## MOTION TO SUPPRESS

### *Standard of Review*

We review a trial court's ruling on a motion to suppress through a bifurcated standard of review. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017); *State v. Merritt*, 567 S.W.3d 778, 779 (Tex. App.—San Antonio 2018, no pet.). "We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Ramirez-Tamayo*, 537 S.W.3d at 35. "On the other hand, we apply a de novo standard of review to the legal significance of the facts as found by the trial court[.]" *Id.* "When, as in this case, the trial court has not made specific findings of fact, we must view the evidence in the light most favorable to the trial court's ruling." *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). "We will sustain the trial court's application

of the law if it is correct on any applicable theory of law, and the record reasonably supports the ruling." *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019).

### *Applicable Law and Analysis*

In six appellate issues, which we review as two, Martinez challenges: (1) his warrantless arrest and the supporting probable cause; and (2) the warrantless search of his vehicle and the supporting probable cause.

### 1) *Warrantless Arrest and Supporting Probable Cause*

Generally, a warrant must be obtained prior to effectuating an arrest. *See* U.S. CONST. amend. IV. However, "[a] police officer may arrest an individual without a warrant . . . if (1) there is probable cause with respect to that individual and (2) the arrest falls within one of the statutory exceptions." *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002). "Probable cause deals with probabilities; it requires more than mere suspicion, but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023) (internal quotation marks omitted). While the mere suspicion or hunch of a single officer is insufficient to establish probable cause, the sum of the information known to cooperating officers at the time of an arrest is to be considered in determining whether there was sufficient probable cause. *See State v. Martinez*, 569 S.W.3d 621, 626 (Tex. Crim. App. 2019) (holding under the "'collective knowledge' doctrine, when several officers are cooperating, their cumulative information may be considered in assessing reasonable suspicion or probable cause."). To determine whether probable cause existed at the time of the arrest, we consider the totality of the circumstances. *See Espinosa*, 666 S.W.3d at 667; *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) ("The subjective intent or motivations

of law enforcement officials is not taken into account when considering the totality of the circumstances.").

While the State advances several exceptions to the warrant requirement, its flagship position relies on the notion that Martinez committed a felony offense in the presence of law enforcement.[2] *See* TEX. CODE CRIM. PROC. art. 14.01(b); *see also Martinez v. State*, 620 S.W.3d 734, 740 (Tex. Crim. App. 2021) ("The burden is on the State to establish the reasonableness of a warrantless arrest."); *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) ("The state may satisfy this burden by showing that one of the statutory exceptions to the warrant requirement is met."). For Martinez's arrest to be constitutionally sound under this exception to the warrant requirement, the State must prove that the offense was committed in law enforcement's presence or within their view. TEX. CODE CRIM. PROC. art. 14.01(b). Additionally, as for the probable cause requirement, "[p]robable cause exists under Article 14.01(b) if, when the arrest is made, the facts, circumstances, and reasonably trustworthy information known to the arresting officer, are sufficient for a prudent person to conclude that an individual committed or was committing a criminal offense." *Espinosa*, 666 S.W.3d at 667; *Martinez*, 569 S.W.3d at 625–26.

Here, the record supports the legality of Martinez's warrantless arrest. A grand jury indicted Martinez on one count of online solicitation of a minor for sexual conduct, which is a felony. *See* TEX. PENAL CODE § 33.021(c), (f). "According to the plain language of the statute, the gravamen of the offense defined by subsection (c) is the knowing solicitation of a minor to meet a person, with the intent that the minor will engage in some form of sexual contact with that person." *Ganung v. State*, 502 S.W.3d 825, 828 (Tex. App.—Beaumont 2016, no pet.); *McLeod v. State*,

---

[2] The State alternatively argued Martinez's warrantless arrest was proper because Martinez was in a suspicious place and under circumstances which reasonably show that he is guilty of a felony. *See* TEX. CODE CRIM. PROC. art. 14.03(a)(1). However, given our disposition of the issues based on the State's flagship position, we need not reach the State's alternative grounds. *See* TEX. R. APP. P. 47.1.

693 S.W.3d 634, 643 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd). "The crime of soliciting a minor on the internet under section 33.021(c) is completed at the time of the internet solicitation, and not at some later time if and when the actor actually meets the child." *Ganung*, 502 S.W.3d at 829.

Addressing the probable cause requirement, Martinez argues that probable cause could not have existed at the time of his arrest because the specific plans for the meeting were not reiterated on the day of his arrest. We disagree based on the probable cause standard. *See Espinosa*, 666 S.W.3d at 667.

At the time of his arrest, law enforcement had information from a series of online communications, which included: the solicited sexual acts to be committed; the color and type of Samcman's vehicle that would be at a specific gas station at a specific time; that Samcman would be bringing a specific Whataburger order; and that Samcman was filling up his white SUV with gas when the arrest was effectuated. All these circumstances, when taken together from the collective knowledge of cooperating law enforcement, support the trial court's implicit finding that a reasonable prudent person could believe at the time of the arrest that Martinez, as "Samcman," solicited a person he believed to be under the age of seventeen with the intent to engage in felonious sexual conduct. *See id.*; *Martinez*, 569 S.W.3d at 626.

Martinez additionally argues his warrantless arrest under the felony exception cannot stand because law enforcement did not know the identity of Samcman at the time he was arrested. We find this argument unpersuasive and conclude that "on the facts of [this] particular case," it is immaterial whether Samcman's specific identity was known at the time of Martinez's arrest. *See Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997); *State v. Teran-Cortes*, No. 09-18-00315-CR, 2019 WL 2203458, at *6 (Tex. App.—Beaumont May 22, 2019, no pet.) (mem. op.,

not designated for publication) ("The law does not require the State to identify the suspect by name as a prerequisite to the development of 'probable cause' to arrest the individual."). Rather, what is material is whether, based on the totality of the circumstances within the collective knowledge of law enforcement at the time of the arrest, a reasonable person would believe that Martinez had committed or was committing the crime of online solicitation of a minor. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Teran-Cortes*, 2019 WL 2203458, at *6. As described above, the record supports answering the inquiry in the affirmative. Accordingly, we hold that sufficient probable cause existed to support Martinez's warrantless arrest. TEX. CODE CRIM. PROC. art. 14.01(b); *Espinosa*, 666 S.W.3d at 667. Therefore, we overrule issue one.

*2) The Warrantless Search — Automobile Exception*

As for the second issue for our review, Martinez argues that the trial court erred in denying his motion because law enforcement searched his vehicle without probable cause or a warrant. The State contends that probable cause existed and that law enforcement properly exercised the automobile exception to the general rule requiring a warrant to search a vehicle. *See* U.S. CONST. amend. IV; *Wiede*, 214 S.W.3d at 24.

"The automobile exception allows for the warrantless search of an automobile if it is readily mobile and there is probable cause to believe that it contains [evidence of a crime]." *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017) (internal quotation marks omitted); *Neal*, 256 S.W.3d at 282. "The two justifications for the automobile exception are the automobile's ready mobility and the lower expectation of privacy in an automobile because it is subject to government regulation." *State v. Gonzales*, 676 S.W.3d 261, 265 (Tex. App.—Dallas 2023, no pet.). The automobile exception does not require exigent circumstances. *See Neal*, 256 S.W.3d at 283; *State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) ("[W]e hold, as

Supreme Court precedent dictates, that the automobile exception to the Fourth Amendment of the United States Constitution does not require the existence of exigent circumstances in addition to probable cause."). Thus, "an officer may search a vehicle on the basis of probable cause to believe that it contains [evidence of a crime], although exigent circumstances do not exist." *Gonzales*, 676 S.W.3d at 265.

Here, it is undisputed that Martinez's white SUV was readily mobile. Accordingly, the only question remaining is whether law enforcement had probable cause to believe that Martinez's white SUV contained evidence of a crime. *See Marcopoulos*, 538 S.W.3d at 599; *Neal*, 256 S.W.3d at 282.

The record shows that law enforcement knew from Samcman's communications that, in addition to driving a white SUV and being at a specific gas station at a specific time, Samcman would be bringing a specific Whataburger order. At the time Samcman messaged that he was filling up his vehicle, Martinez was filling up his white SUV, the only white SUV at the fuel pumps at that specific gas station at the scheduled time. A reasonable person, under a totality of the circumstances, based on information contained in the messages between Samcman and Prty13, could believe that the only white SUV being filled with gas could contain evidence of the alleged crime of online solicitation of a minor for sexual conduct.[3] *See Marcopoulos*, 538 S.W.3d at 599; *Espinosa*, 666 S.W.3d at 667; *see, e.g.*, *Quinonez v. State*, Nos. 05-11-00868-CR & 05-11-00925-CR, 2012 WL 2149410, at *2–3 (Tex. App.—Dallas June 14, 2012, pet. ref'd) (mem. op., not designated for publication) (holding law enforcement properly seized a cell phone from a vehicle

---

[3] Finally, Martinez argues the State failed to show exigent circumstances to effectuate the search. However, as discussed above, exigent circumstances are not a factor considered when determining the legality of a search conducted pursuant to the automobile exception. *See Neal*, 256 S.W.3d at 283.

under the automobile exception where the officer knew the cell phone contained evidence of a crime).

In his brief, Martinez emphasizes the conflicting evidence regarding whether the Whataburger bag and cup were in plain view and to what extent various law enforcement personnel looked into the SUV prior to the search. However, whether the Whataburger bag and cup were in plain view and seen by law enforcement, under these facts, is immaterial, as law enforcement's probable cause did not depend on viewing the bag and cup inside the vehicle. *See, e.g.*, *Barnes v. State*, 424 S.W.3d 218, 225 (Tex. App.—Amarillo 2014, no pet.) ("An officer's observation of contraband or evidence of a crime in plain view inside an automobile *can* be used to establish probable cause to seize the contraband or evidence.") (emphasis added). Rather, probable cause for the search under the automobile exception was established based on the combination of circumstances as described above. *See id.*; *see also United States v. Ross*, 456 U.S. 798, 825 (1982) (noting the automobile exception to the warrant requirement permits a "search of every part of the vehicle and its contents that may conceal the object of the search").

In sum, when taken together, the record as described above would lead a reasonable person to believe that the white SUV that Martinez drove to the gas station and was putting gas into, with the driver's side door open, would likely contain evidence of a crime. *See Neal*, 256 S.W.3d at 282–83. Accordingly, we hold that probable cause existed to search Martinez's vehicle pursuant to the automobile exception. We overrule issue two.

## CONCLUSION

We affirm the order of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH