**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leah Joyce TELLER, Defendant-Appellant.**

**No. 16065.**

United States Court of Appeals Seventh Circuit.

June 25, 1968.

Rehearing Denied Aug. 5, 1968.

Certiorari Denied Nov. 12, 1968. See 89 S.Ct. 299.

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for defendant-appellant.

Michael R. Siavelis, Thomas A. Foran, U. S. Atty., Eward V. Hanrahan, U. S. Atty., Chicago Ill., for plaintiff-appellee; John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before SCHNACKENBERG, FAIRCHILD and CUMMINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Leah Joyce Teller, defendant, has appealed from a judgment of the district court, sitting without a jury, convicting her on the first count of an indictment charging that she did on July 23, 1966, purchase, sell, dispense and distribute 4.200 grams of heroin, in violation of Title 26, United States Code, § 4704(a).[1]

A motion was made by defendant to suppress evidence and to return property on the ground that the search and seizure were unreasonable, not authorized by a warrant or search warrant, and that the property was not subject to search and seizure, all in violation of the fourth amendment to the federal constitution. The property was described as a purse and alleged narcotics. An answer to the motion was filed alleging the existence on July 23, 1966 of a search warrant for the premises at 9736 South Longwood Drive, Chicago, Illinois, and an arrest warrant for the person of Sheldon R. Teller, husband of defendant, and that the purse and its contents were seized on said premises, and that, therefore, the search and seizure were valid.

A hearing was had on the motion and the answer thereto. The motion was denied.

Defendant is the wife of Sheldon Teller, with whom she was living with their

---

1. The second and third counts were dismissed on motion of the government.

children on July 23, 1966, when a warrant was issued for his arrest and a search warrant was issued for his dwelling and garage at said address, based on an affidavit of a government agent that he had reason to believe that on the premises known as the dwelling and garage at said address there was concealed

"* * * certain property, namely money which is the fruit of a crime to wit, a violation of Title 21, Sec. 174 U.S. Code.

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Information from Samuel Washington, that he paid Sheldon R. Teller, occupant of said premises, $3,000 for narcotic drugs July 21, 1966. C. L. Jackson, nar. agt., informed complainant he saw the delivery of the narcotics. Complainant furnished Washington with the money. According to Agts. Rendina and Hughes they observed said Teller in possession of narcotic paraphernalia on May 4, 1966."

Said premises were entered by virtue of said search warrant and a search thereof was made. At that time the federal agents first saw defendant behind the driver's seat of her Cadillac car, parked in the driveway of the house. After her husband's arrest, she came into the home. She was carrying a navy blue handbag. The officers and agents immediately commenced their search. Both Teller and defendant, as well as their children, were present.

Agent Pringle, together with another agent and a police officer, upon entering the home went immediately to the main bedroom, taking Teller with him, and began to search. Defendant was then in the living room with one of the children.

Later defendant came into the bedroom and walked over and kissed her husband. She left the room on at least one occasion, and came back. She says she was in and out of the bedroom three or four times.

On her first trip to the room, she put a handbag on the corner of the foot of the bed. Search of the room pursuant to the warrant was then in progress. After about twenty minutes Agent Pringle picked up the purse. He inspected it and found several compartments inside with various feminine articles, and two vials containing powders indicating the presence of an opium derivative. He also found car keys and household keys, a pair of women's silk hose, cosmetics, combs, and certain articles that would "normally" be found in a woman's purse, and $530.

He thereupon arrested defendant and warned her about her right to counsel and that any statements she made could be used against her in a court of law. Pringle asked her if the purse belonged to her and she said that it did. He asked her if the $530 belonged to her and she replied in the affirmative and that her husband Sheldon had given it to her to go shopping. He then asked her if the two plastic vials containing the white powder belonged to her, and she said that her husband told her not to answer any questions, that her husband would get their attorney.

■ 1. Arguing that a woman's purse occupies a peculiar status and that this court should take judicial notice of the supreme privacy that a woman attaches to her pocketbook, defendant's counsel says that a purse is an extension of the person, its form being only a matter of expediency, custom and style development over the centuries. While we might, for the sake of argument, agree with that statement, we must then consider the next statement of counsel, viz.:

"* * * But the fact is that a purse, any purse, must be put down. It cannot be constantly carried. And the fact that it must be put down does not make it a part of the household wares, subject to general exploration. * * *"

The fallacy of this argument is that, while it recognizes that the use of a practical means of carrying articles with

her is employed when a woman carries a purse, which is undoubtedly selected to harmonize with her costume and personal appearance generally, those incidental effects result only when she is *carrying* a purse in harmony with the color context of her clothing and general appearance, i.e. when she is "wearing" a purse. The same reasoning would apply to any of her garments. On the other hand, it is obvious that, when defendant placed the purse upon the bed and left the room, she was not continuing to "wear" it as an "extension of her person". For the time being at least the purse was then no more a part of her person than would have been a dress which she had worn into the room and then removed for deposit in a clothes closet. We conclude that it would be contrary to the facts to hold that a search of a purse lying upon a bed, where it was placed by its owner, constitutes a search of the *person* of that owner, who had placed it there and then left the room.

Defendant testified in answering questions by the court, as follows:

The Court: When you put the purse on the bed, was it open or closed?

The Witness: It was open.

The Court: And it was open when Agent Pringle showed it to you?

The Witness: Yes.

The record shows that the open purse remained on the bed for twenty minutes before its contents were searched by federal agents pursuant to the search warrant which they held for the premises. Although defendant visited the bedroom four times while the search was in progress, she failed to pick it up prior to the time it was searched.

■ In this court it is the contention of her counsel that her rights under the fourth amendment were thus violated. However, we agree with the government's argument that, where entry upon the premises was authorized, nothing in the fourth amendment inhibits the seizure by law enforcement agents of contraband, the possession of which is a crime.

In Harris v. United States, 331 U.S. 145, 154–155, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), where the object of a search was certain stolen checks, the agents discovered an envelope in a dresser drawer marked "Personal Papers" which contained several draft cards, the possession of which was in violation of the Selective Training and Service Act. The Supreme Court said, at page 154, 67 S.Ct. at page 1103:

"Clearly the checks and other means and instrumentalities of the crimes charged in the warrants toward which the search was directed as well as the draft cards which were in fact seized fall within that class of objects properly subject to seizure. Certainly this is not a case of search for or seizure of an individual's private papers, * *.

"* * * In keeping the draft cards in his custody petitioner was guilty of a serious and continuing offense against the laws of the United States. A crime was thus being committed in the very presence of the agents conducting the search. Nothing in the decisions of this Court gives support to the suggestion that under such circumstances the law enforcement officials must impotently stand aside and refrain from seizing such contraband material. If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

■ Defendant's purse lying on the bed was merely another household item subject to the lawful execution of the search warrant which the federal agents held and were enforcing. See Walker v.

United States, 117 U.S.App.D.C. 151, 327 F.2d 597 (1963), cert. denied 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500. The search of the purse was made pursuant to a search warrant for the premises and not as an incident to the defendant's arrest.

■ On the hearing of defendant's motion for the return of property and to suppress the evidence, the district court found that the search of defendant's purse "was not made after she had been arrested unlawfully, and therefore was not tainted." It held the search was lawful. This holding is correct.

■ It is not our duty to set aside a trial court's finding of facts, when supported by credible evidence, and that credibility is to be determined by the trial court. United States v. Ziemer, 7 Cir., 291 F.2d 100, 102 (1961), cert. den. 368 U.S. 877, 82 S.Ct. 120, 7 L.Ed.2d 78; United States v. Garelli, 7 Cir., 333 F.2d 649, 650 (1964), cert. den. 380 U.S. 917, 85 S.Ct. 904, 13 L.Ed.2d 801; United States v. Caro, 7 Cir., 350 F.2d 862, 863 (1965).

The record shows that defendant asked the agents if she was under arrest and she got a negative reply, they assuring her that she had complete freedom of the house and movement. While her counsel in this court argue that defendant was in fact under arrest when the search of "her effects was executed", and the arrest was illegal that contention is erroneous. In fact the agents evidently were never interested in defendant, but were concerned with the arrest of Teller and the discovery of money hidden by him. Defendant was never questioned until the agents found her purse. She used the telephone to call an attorney and a bondsman. She did not testify that she tried to leave the house or that she was prevented from doing so by the agents. As the district court commented, "they had no interest in her".

■ Finally, we hold that the affidavit and search warrant were based upon probable cause and sufficiently described the premises to be searched and the property to be seized.

For the foregoing reasons the judgment of the district court from which this appeal was taken is affirmed.

Judgment affirmed.