Belknap
No. 98-284

## THE STATE OF NEW HAMPSHIRE

v.

## NICHOLAS LEIPER

August 31, 2000

*Philip T. McLaughlin*, attorney general (*N. William Delker*, assistant attorney general, on the brief and orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J. The defendant, Nicholas Leiper, appeals his convictions, after a bench trial in Superior Court (*Smukler*, J.), for possession of marijuana with intent to distribute and possession of hallucinogenic mushrooms. *See* RSA 318-B:2 (1995). The only question before us is whether the search of the defendant's knapsack pursuant to a premises-wide warrant violated Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment of the United States Constitution. We affirm.

The following facts were adduced at the suppression hearing prior to trial. On August 28, 1997, the Gilford Police Department executed a valid search warrant for 45 Henderson Road, apartment 2A. The warrant provided for a search of the premises and the tenant, Jason Roberts, for "evidence of the crime of possession and/or sale of controlled substances," including "marijuana and/or hallucinogenic mushrooms." The police applied for the warrant knowing that it was for the site of frequent parties, and purposely executed the warrant during a party. There were approximately a dozen people in the apartment when the police arrived with the warrant. Drugs and drug paraphernalia were in plain view at the time the warrant was executed.

When the police entered the apartment, the defendant was sitting on or near a couch and a knapsack was near him on the couch. Shortly thereafter, the defendant was removed from the apartment because he was acting in a disruptive manner. During the course of

their search of the apartment, the police opened the knapsack and found marijuana before finding items identifying the defendant as its possible owner. The knapsack was seized and the police eventually found hallucinogenic mushrooms in it.

The defendant contends that the search of his knapsack was outside the scope of the warrant and that the evidence found in it should have been suppressed. "Our review of the superior court's order on [a] motion to suppress is *de novo*, except as to any controlling facts determined at the superior court level in the first instance." *State v. Daniel*, 142 N.H. 54, 57, 694 A.2d 989, 991 (1997) (quotation omitted). Because Part I, Article 19 of our State Constitution provides at least as much protection as the Federal Constitution, a separate federal analysis is unnecessary. *Id.*; *see State v. Ball*, 124 N.H. 226, 231-32, 471 A.2d 347, 350-51 (1983). Under these circumstances, "[o]ur holding rests on the State Constitution, and we use federal cases solely as analytical aids." *State v. Ringuette*, 142 N.H. 163, 165, 697 A.2d 507, 509 (1997).

Whether a warrant authorizing the search of a premises includes the authority to search a container owned by a visitor is a question of first impression for this court. Other jurisdictions follow some form of "relationship/notice" test or "physical proximity/possession" test when making this determination. *See generally Houghton v. State*, 956 P.2d 363 (Wyo. 1998) (adopting notice test and suppressing evidence), *rev'd, Wyoming v. Houghton*, 526 U.S. 295 (1999); *State v. Andrews*, 549 N.W.2d 210 (Wis. 1996) (adopting possession test). Under a "relationship/notice" test, the police may not search a container if they are on notice that it belongs to a person not named in the warrant unless that person has a special relationship to the place identified in the warrant. *See Andrews*, 549 N.W.2d at 213-14.

Under a "physical proximity/possession" test, the police may search any container that could conceal an item listed in the warrant unless the container is being worn by, or is in the actual possession of, a person not named in the warrant. *See id.* at 214.

The defendant argues that we should adopt a relationship/notice test and the State argues we should adopt a possession test. We agree with the State that the reasoning articulated by the Supreme Court of Wisconsin in *Andrews* and the Supreme Court of the United States in *Wyoming* is the most reasonable approach. *See generally Andrews*, 549 N.W.2d 210; *Wyoming*, 526 U.S. 295. As a result, we adopt a "physical proximity/possession" test for the execution of premises-wide warrants in New Hampshire, which test we apply under the circumstances of this case.

"[S]earch warrants are not directed at persons; they authorize the search of 'places' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Andrews*, 549 N.W.2d at 216 (quotation and brackets omitted); *see Wyoming*, 526 U.S. at 302.

> [T]he "physical possession" or "proximity" test impose[s] the sole limitation that the police may not search items which are worn by or within the physical possession of persons whose search is not authorized in the warrant. Such belongings (for example jackets and purses) are considered "an extension of the person" and therefore not searchable under a premises only warrant. However, the same items may be searched, as they are considered just another part of the premises, if they have been set down, i.e. if the visitor has relinquished control over them.

*Andrews*, 549 N.W.2d at 214. "[A] premises only search warrant, without more, does not authorize the search of a person or of objects worn or possessed so as to constitute extensions of the person. The critical nexus is not an abstract, relational one between person and place, but a concrete, physical one between person and thing." *Id.* at 216-17.

We recognize that "[s]ome courts have criticized the physical proximity test as being easily thwarted because a visitor could simply pick up an item containing contraband when police enter to execute a warrant." *Id.* at 217. We agree, however, with the *Andrews* court "that the relationship/notice test is much more susceptible to abuse . . . [because] a visitor could simply assert ownership to immunize property from search or, conversely, police could make a point of never being put on notice so that they could assume all items were searchable." *Id.* Additionally, the relationship/notice test is so nebulous it provides little guidance to police officers or trial courts. *Id.* at 217-18 (noting cases with differing results under similar circumstances).

We believe, therefore, that this "physical proximity/possession" test will minimize the potential for fraud and gamesmanship during the execution of search warrants when parties not named in the warrant are present at the location of a search. *See Wyoming*, 526 U.S. at 307 (Breyer, J., concurring); *State v. Settle*, 122 N.H. 214, 218-19, 447 A.2d 1284, 1286-87 (1982) (simple and practical requirements to protect constitutional rights serve the sound administration of justice and benefit the police, the courts, and the bar); *Andrews*, 549 N.W.2d at 217.

In this case, the defendant was not in possession of the knapsack while the police were in the apartment on Henderson Road. The warrant executed by the police authorized the search of the premises for marijuana and hallucinogenic mushrooms. The knapsack was a container that could hold either the marijuana or the hallucinogenic mushrooms identified in the warrant. Therefore, the search of the knapsack was within the scope of the warrant, and the defendant's constitutional rights were not violated by the search.

*Affirmed.*

BROCK, C.J., sat for oral argument but did not take part in the final vote; JOHNSON, J., sat for oral argument but retired prior to the final vote; BRODERICK, J., concurred; NADEAU and DALIANIS, JJ., who took part in the final vote by consent of the parties, concurred.