IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**ALICIA LEAH GILSTRAP,**
*Appellant.*

No. CR-13-0379-PR
Filed August 20, 2014

Appeal from the Superior Court in Mohave County
The Honorable Derek C. Carlisle, Judge Pro Tempore
No. CR201000770
**AFFIRMED**

Memorandum Decision of the Court of Appeals,
Division One
1 CA-CR 12-0448
**VACATED**

COUNSEL:

Thomas C. Horne, Arizona Attorney General, Robert L. Ellman, Solicitor General, Joseph T. Maziarz, Section Chief Counsel, Criminal Appeals Section, Alice Jones (argued), Assistant Attorney General, Phoenix, for State of Arizona

Barbara Cook-Hamp, Legal Advocate Attorney, Jill L. Evans (argued), Deputy Legal Advocate Attorney, Kingman, for Alicia Leah Gilstrap

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, JUSTICE BERCH, and JUSTICE TIMMER joined.

JUSTICE BRUTINEL, opinion of the Court:

1

¶1 We are asked to decide whether a warrant authorizing the search of a home also authorizes police to search a purse found there but belonging to a person not named in the warrant. Under the facts of this case, we conclude that it does.

## I. BACKGROUND

¶2 Police obtained a warrant to search a Kingman residence for drugs and drug paraphernalia. The warrant also identified two individuals believed to be present. While executing the warrant, police found Alicia Leah Gilstrap, who was not named in the warrant, taking a shower. They escorted Gilstrap to another room. An officer removed a purse from the bathroom and placed it in an adjoining bedroom.

¶3 While searching that bedroom, another officer searched the purse. Inside it he found Gilstrap's driver's license, baggies containing marijuana, methamphetamine and methamphetamine residue, packages of red and blue baggies, and a scale. Gilstrap was charged with possession of methamphetamine for sale, possession of marijuana, and possession of drug paraphernalia.

¶4 Before trial, Gilstrap moved to suppress the evidence found in her purse, arguing that "law enforcement officers could not lawfully search her purse because she was only on the premises 'incidentally' and was not named in the warrant." Acknowledging a split of authority "on how to handle the property of a person who is on the premises to be searched but not named in the warrant," the trial court referred to a possession test and a relationship test. The court explained that neither test had been adopted in Arizona, but determined that "under either test, police were permitted to search the purse." The court of appeals affirmed, applying the same reasoning. *State v. Gilstrap*, 1 CA-CR 12-0448, at *1, *3, ¶¶ 4, 11 (Ariz. App. Sept. 19, 2013) (mem. decision).

¶5 We granted review to identify the test for Arizona, a legal issue of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II. DISCUSSION

**¶6**     We review for abuse of discretion the trial court's factual findings on the motion to suppress, but review de novo the trial court's ultimate legal determination that the search complied with the Fourth Amendment. *State v. Davolt*, 207 Ariz. 191, 202 ¶ 21, 84 P.3d 456, 467 (2004).

**¶7**     The Fourth Amendment guarantees that persons shall be free from unreasonable searches and seizures. U.S. Const. amend. IV. Search warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." *Id.* The Supreme Court has explained that a valid search warrant authorizes the search of any container found on the premises that might contain the object of the search. *United States v. Ross*, 456 U.S. 798, 820 (1982). Notwithstanding this general principle, a premises warrant does not authorize the search of a person who is not named therein. *See Ybarra v. Illinois*, 444 U.S. 85, 92–93 (1979).

**¶8**     "[S]pecial concerns arise when the items to be searched belong to visitors, and not occupants, of the premises" because these "searches may become personal searches outside the scope of the premises search warrant." *United States v. Giwa*, 831 F.2d 538, 544 (5th Cir. 1987). That is, the search may be subject to *Ybarra*'s rule that police cannot search the "person" of individuals found on the premises who are not named in the warrant. 444 U.S. at 92–93. Courts determining whether a premises search warrant permits the search of a visitor's belongings have usually adopted one of three approaches: the possession test, the relationship test, or the actual-notice test.

**¶9**     Under the possession test, officers may search personal items, such as purses or clothing, that are not in their owners' possession when police find them in executing a premises search warrant. This test was first applied in *United States v. Teller*, 397 F.2d 494 (7th Cir. 1968), which involved a premises warrant that did not name the defendant. *Id.* at 496. While officers were executing the warrant, the defendant came home, entered her bedroom, and left her purse on the bed. *Id.* Officers searched her purse and found drugs. *Id.* The court upheld the search of the purse, reasoning that once the defendant put the purse on the bed, it was no longer "an extension of her person." *Id.* at 497. Under the possession test, the search of a personal item like a purse is not regarded as a search of the person when the item is not in the person's possession. *See id.* at 497–98.

¶10          Several jurisdictions have adopted the possession test. *See United States v. Branch*, 545 F.2d 177, 181–82 (D.C. Cir. 1976) (search of a shoulder bag that was being worn was improper); *United States v. Johnson*, 475 F.2d 977, 979 (D.C. Cir. 1973) (search of purse resting separately from its owner, was not "worn" and therefore the search was proper); *State v. Reid*, 77 P.3d 1134, 1143 (Or. Ct. App. 2003) (search of defendant's jacket that was near him, but not in his possession was proper); *State v. Jackson*, 873 P.2d 1166, 1169 (Utah Ct. App. 1994) (search of purse not in possession of visitor was proper).

¶11          Other jurisdictions have rejected the possession test, finding that it "suffers from being at once too broad and too narrow." *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir. 1973). The court in *Micheli* chose instead "to examine the relationship between the person and the place." *Id.* The court concluded that a search warrant for an office authorized the search of a briefcase belonging to the business's co-owner because the defendant "was not in the position of a mere visitor or passerby who suddenly found his belongings vulnerable to a search of the premises." *Id.* at 432. Rather, because "[h]e had a special relation to the place" the determination of probable cause supporting the issuance of the warrant included personal articles, like a briefcase, that might also be found inside the office. *Id.*

¶12          The relationship test has also found support in other cases. *See United States v. Young*, 909 F.2d 442 (11th Cir. 1990) (concluding that the relationship test was "more reasonable" than the possession test and holding that officers acted within scope of a premises warrant by searching purse of a person who lived at the premises but fled as officers arrived); *United States v. McLaughlin*, 851 F.2d 283 (9th Cir. 1988) (finding that the co-owner of business searched with valid warrant had a sufficient relationship to the premises to allow police to search briefcase); *Giwa*, 831 F.2d at 545 (concluding that the search of defendant's bag was appropriate because he was sleeping at the residence when police knocked and he opened the door clad in a bathrobe and slacks, factors tending to show he was more "than just a temporary presence in the apartment").

¶13          A few jurisdictions have adopted a third approach, the actual-notice test. *See State v. Nabarro*, 525 P.2d 573 (Haw. 1974). This test derives from the relationship test, but instead of focusing on the relationship between the visitor and the premises, it focuses on the notice given to police regarding an item's ownership before it is searched. *Id.* at 576–77. This test

allows police to search an item that may contain the object of a premises warrant unless they are put on notice that the item belongs to a non-resident. *Id.* at 577.

¶14        This test has also found support in several jurisdictions. *See Waters v. State,* 924 P.2d 437, 439 (Alaska Ct. App. 1996) (finding search of defendant's coin purse proper because no "circumstances provid[ed] clear notice that the purse actually belonged to [defendant]"); *People v. McCabe,* 192 Cal. Rptr. 635, 637 (Cal. Ct. App. 1983) (finding search of purse was proper because police had no facts that "would have put them on notice that the purse belonged to a non-resident"); *State v. Lambert,* 710 P.2d 693, 697–98 (Kan. 1985) (finding search of purse improper because officers had no reason to believe that the purse belonged to the person named in the warrant); *State v. Thomas,* 818 S.W.2d 350, 360 (Tenn. Crim. App. 1991) (finding search improper because officers "knew or should have known" that the purse belonged to a non-resident).

¶15        After considering each test, we conclude that the possession test provides the best approach. It aligns with the Supreme Court's decisions in *Ybarra* and *Wyoming v. Houghton*, 526 U.S. 295 (1999). *Ybarra* limits the principle that a premises warrant authorizes police to search any item that might contain the object of the search by holding that the warrant does not authorize the search of a person it does not name. 444 U.S. at 92–93. This reflects that searches of a person involve a higher degree of intrusiveness and require justification in addition to that provided by the probable cause that supports a premises warrant. Even though the search of certain personal items, such as a purse, can in some circumstances amount to the search of a person, *Houghton* recognizes that they are not such a search when the item is not in the owner's actual possession. *Houghton*, 526 U.S. at 305–06. Although *Houghton* is not dispositive because it concerned a vehicle search, "the thrust and tone of the Court's analysis leaves little doubt that, if faced with the question, the Court would endorse a 'physical possession' test for searches of premises." *Reid*, 77 P.3d at 1141.

¶16        Additionally, the possession test's simplicity, precision, and the guidance it offers to police and courts make it superior to the relationship and actual-notice tests. *See Micheli*, 487 F.2d at 431 (1st Cir. 1973) (noting that "[The possession test] has the virtue of precision"); *State v. Leiper*, 761 A.2d 458, 462 (N.H. 2000) (finding that the possession test minimizes "the potential for fraud and gamesmanship during the execution

of search warrants when parties not named in the warrant are present at the location of a search"); *Reid*, 77 P.3d at 1140 (observing that courts that have adopted the possession test "have emphasized its simplicity and clarity"). Searches often occur in harried, dangerous circumstances and officers may not be readily able to identify the relationships between persons and the premises or to assess whether items might belong to someone not named in the warrant.

¶17 The relationship and actual-notice tests are more difficult for police to navigate and for courts to administer. *See Leiper*, 761 A.2d at 462 (concluding that "the relationship/notice test is so nebulous it provides little guidance to police officers or trial courts"); *Commonwealth v. Reese,* 549 A.2d 909, 911 (Pa. 1988) (explaining that the relationship test would make it "impossible for police to effectively search a premises where visitors are present because they would not know which items, clothing and containers could be searched and which could not be searched"); *Jackson*, 873 P.2d at 1168 (explaining that the relationship test would require officers "to ascertain the ownership of each item or container in the premises . . . [then] determine whether the owner of the item or container was merely a 'transient visitor' or whether there was some greater connection to the premises").

¶18 Gilstrap argues that she constructively possessed the purse in the bathroom even though she did not physically possess it. She relies on the California Court of Appeals' decision in *Reyes*, which concluded that clothing removed by a defendant and placed nearby while he showered was "an extension of [his] person rather than simply an article of personal property on the premises." 273 Cal. Rptr. 61, 65 (Cal. Ct. App. 1990).

¶19 We find *Reyes* unpersuasive and decline to follow it. The possession test provides a bright-line rule that is clearly and easily applied. Adding a "constructive" element to the possession test would thwart this goal by requiring law enforcement officers to guess whether items in proximity to a person not identified in the warrant would soon be used by that person. Indeed, Gilstrap identifies no other case adopting *Reyes*. *Compare Johnson*, 475 F.2d at 979 (finding warrant authorized search of purse on coffee table beside the couch where the defendant was sitting), *Reid*, 77 P.3d at 1143 (finding warrant authorized the search of defendant's jacket that was not in his "actual physical possession"), *and Jackson*, 873 P.2d at 1169 (finding warrant authorized search of a purse "not in defendant's

physical possession when it was searched"), *with Reyes*, 273 Cal. Rptr. at 65 (finding a warrant did not authorize the search of clothing placed in the bathroom while defendant was showering because it was "an extension of defendant's person").

¶20         Applying the possession test here, we hold that because Gilstrap did not physically possess her purse when the officers found it, they were authorized to search it for the items listed in the warrant.

## III.    CONCLUSION

¶21         We vacate the court of appeals' decision, affirm the trial court's denial of Gilstrap's motion to suppress, and affirm her convictions and sentences.