COMMONWEALTH of Pennsylvania, Appellant

v.

Deshannon PETTY, Appellee

No. 1739 EDA 2016

Superior Court of Pennsylvania.

Argued February 14, 2017

FILED MARCH 10, 2017

Matthew M. LaMonaca, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Emily L. Mirsky, Public Defender, Philadelphia, for appellee.

BEFORE: SHOGAN, SOLANO, and PLATT,* JJ.

OPINION BY SHOGAN, J.:

■ Appellant, the Commonwealth of Pennsylvania, appeals from the May 12, 2016 order granting the suppression mo-

tion filed by Appellee, Deshannon Petty.[1] Following our careful review of the record and the law, we reverse and remand.

The suppression court summarized the facts as follows:

The Philadelphia Narcotics Unit set up surveillance at the target location of 5203 "C" Street, City and County of Philadelphia. On each of the following dates drug purchases were completed using a confidential informant. The dates were June 11, 2015, June 23, 2015 and June 25, 2015. The seller of the drugs, on each occasion was Darnell Faison [ ("Faison") ]. Following the purchase of June 23, 2015, Police Officer London requested and received Search and Seizure Warrant #189157 for the location stated above. A final purchase was made on June 25, 2015, and Defendant Faison was arrested after which the Warrant was executed. Entry to the building was gained using keys which were recovered from Defendant Faison at the time of his arrest.

Upon gaining entry to the home, Officer London and Officer Floyd went to the second floor where they encountered Defendant Petty who was in bed in the rear bedroom. Petty was with a female. The officers ordered Petty to get up, so Petty reached for his pants which were lying on the floor. Officer Floyd ordered Petty to stop then the officer searched the pants, going into the pockets of the pants prior to turning the pants over to Petty. During the "in pocket" search United States currency and a wallet con-

---

* Retired Senior Judge assigned to the Superior Court.

1. The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. *Commonwealth v. Whitlock*, 69 A.3d 635, 636 n.2 (Pa. Super. 2013); Pa.R.A.P. 311(d) (known as *Dugger*

certification; *see Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985)) (The Commonwealth's appeal of a suppression order is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order substantially handicaps its prosecution.). The notice of appeal contains the required certification.

taining photo identification for Petty were recovered. The officer also removed from the pants pocket a package which he believed to be narcotics. Petty had not been involved in any of the prior drug transactions.

Suppression Court Opinion, 8/12/16, at 1–2.

Appellee was arrested on June 25, 2015, and charged with possession of a controlled substance with the intent to deliver, conspiracy, possession of a controlled substance, and possession of drug paraphernalia.[2] Appellee filed a motion to suppress on October 21, 2015, asserting that drugs found in the pocket of his pants should be suppressed. On May 12, 2016, the trial court held a suppression hearing. The Commonwealth presented the only witness, Philadelphia Police Officer Nathan London; Appellee presented no witnesses. Immediately following the hearing, the trial court dictated its findings of fact and conclusions of law and granted the motion to suppress. N.T., 5/12/16, at 50–53. The Commonwealth filed a timely notice of appeal; both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth presents the following issue for our review:

> Did the lower court err in suppressing [Appellee's] drugs, which were found in a pair of pants laying [sic] on the ground in a house being searched pursuant to a valid warrant?

Commonwealth's Brief at 4.

▬▬ Our standard of review of a trial court's order granting a defendant's motion to suppress evidence is well established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Miller*, 56 A.3d 1276, 1278–1279 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

*Commonwealth v. Korn*, 139 A.3d 249, 252–53 (Pa. Super. 2016). Here, as noted *supra*, Appellee presented no witnesses, and the Commonwealth presented one. Therefore, the Commonwealth's evidence is uncontradicted. *Commonwealth v. Smith*, 979 A.2d 913, 917–918 (Pa. Super. 2009) (The "Commonwealth's evidence is essentially uncontradicted" because the defense did not present any witnesses at the suppression hearing).

The suppression court issued the following conclusion of law at the end of the suppression hearing:

> The court finds that the police violated the rights of [Appellee] by conducting a thorough in-pocket search of his pants. While the pat-down of the clothing may have been permissible, the search which was conducted was excessive. The police had no prior contact with [Appellee] and

---

**2.** 35 P.S. § 780–113 (a)(30), 18 Pa.C.S. § 930, 35 P.S. § 780–113 (a)(16), and 35 P.S. 780– 113 (a)(32), respectively.

reported neither reasonable suspicion nor probable cause to believe that [Appellee] was engaged in any criminal activity.

N.T., 5/12/16, at 53. In its Pa.R.A.P. 1925(a) opinion, the suppression court determined: "Given the fact that [police] had never even seen [Appellee] before and given the further fact that [Appellee] was in bed with a female when the officers come into contact with him, the police lacked both probable cause and reasonable suspicion to conduct an 'in-pocket' search of [Appellee's] clothing." Suppression Court Opinion, 8/12/16, at 3.

The Commonwealth emphasizes that police did not search Appellee. Rather, they searched the pants on the floor, which was proper because the search warrant granted the authority to search the entire house for contraband. Commonwealth's Brief at 9. The Commonwealth cites *Commonwealth v. Waltson*, 555 Pa. 223, 724 A.2d 289 (1998), for the proposition that the scope of the search, when the place to be searched is adequately described, extends to the entire area. This includes searching a visitor's personal property not on the person. Commonwealth's Brief at 9–10 (citing *Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909 (1988)). The Commonwealth maintains that because Appellee was not wearing the pants, they "were a searchable container as a plausible repository for contraband," *i.e.*, the pants were a container on the floor that could "contain an object of the search: drugs, money, weapons, or proceeds of the drug sales." Commonwealth's Brief at 10 (citing Application for Search Warrant, dated 6/23/15, and Affidavit of Probable Cause, dated 6/23/15).

The Commonwealth contends that this case is "nearly identical" to *Reese*. Commonwealth's Brief at 11. In *Reese*, while conducting a search pursuant to a search warrant, police searched a jacket that was draped over a chair in the kitchen. The search warrant therein authorized the search of the premises of one Tina Cosgrove, although it also noted that Reese was an associate of Cosgrove. *Reese*, 549 A.2d at 909. When police executed the warrant, both Cosgrove and Reese were present. Our Supreme Court stated:

Clearly, the police are not prohibited from searching a visitor's personal property (not on the person) located on premises in which a search warrant is being executed when that property is part of the general content of the premises and is a plausible repository for the object of the search. Otherwise, it would be impossible for police to effectively search a premises where visitors are present because they would not know which items, clothing and containers could be searched and which could not be searched.

*Reese*, 549 A.2d at 911.

Appellee responds that when police entered the bedroom, he was in bed "without any clothes on," his pants were within an arm's reach, and he reached for them to get dressed. Appellee's Brief at 9. Police told him to stop reaching for the pants, and Appellee complied. *Id.* Police then picked up the pants, and put their hands in the pockets to search for weapons. *Id.* at 10. Police found packets of narcotics, as well as a black key holder, which was also searched and contained narcotics. *Id.* Appellee admits the search warrant authorized a search for drugs, weapons, and any other contraband relating to observed drug sales at the residence at 5203 C Street. *Id.* Appellee underscores that the warrant named Darnell Faison as the registered owner of the premises, and Appellee was not named in the warrant nor was he observed participating in any drug sales out of the residence. *Id.*

Appellee attempts to distinguish *Reese*. Appellee's Brief at 11. Appellee suggests that the pants were not "part of the gener-

al content of the premises" because police knew that the pants belonged to Appellee. *Id.* Thus, he contends that the reasoning of the *Reese* Court did not apply to the instant situation. Appellee maintains that his act of reaching for his pants was "not sufficient to lead the officer to reasonably conclude that [Appellee] was armed and dangerous," Appellee's Brief at 14, although Appellee acknowledges Officer London's testimony that the officer observed a bulge in the pants but could not determine whether it was a weapon, contraband, or something else. *Id.* (citing N.T., 5/12/16, at 30). The bulge turned out to be a wallet. *Id.*

The relevant law in this case compels our reversal of the trial court's suppression of the evidence. First, Appellee's reliance on *Commonwealth. v. Grahame*, 607 Pa. 389, 7 A.3d 810 (2010), where the Supreme Court rejected the theory that a "guns follow drugs" presumption justified a protective search for weapons of a woman's purse who was a visitor in a home that had been under surveillance by a drug task force, is inapposite. Unlike the instant case, *Grahame* involved a warrantless search of a residence.

 In the present case, police possessed a search warrant that was supported by an affidavit of probable cause.[3] The United States Supreme Court has advised that a valid search warrant authorizes the search of any container found on the premises that might contain the object of the search. *United States v. Ross*, 456 U.S. 798, 820, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

[W]here a search warrant adequately describes the place to be searched and the items to be seized the scope of the search "extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted."

*Waltson*, 724 A.2d at 292 (citing *Reese*, 549 A.2d at 911).

Because Appellee did not physically possess his pants when police officers found them, police were authorized to search them. *See Commonwealth v. Bleigh*, 402 Pa.Super. 169, 586 A.2d 450 (1991) (police had authority to search purse and briefcase found in premises to be searched); *Commonwealth v. Abdul–Salaam*, 544 Pa. 514, 678 A.2d 342, 352 (1996) (relying on *Reese* and quoting *Ross*, 456 U.S. at 820–821, 102 S.Ct. 2157, Pennsylvania Supreme Court upheld search of briefcase found in closet because "scope of a search 'extends to the entire area in which the object of the search may be found' and properly includes the opening and inspection of containers and other receptacles where the object may be secreted."

The *Reese* Court was clear that there is "a constitutional difference between the search of a visitor's person and the search of a visitor's personal property (property which is not on the person) located on premises where a search warrant is being executed...." *Reese*, 549 A.2d at 910. In upholding the search of the jacket on the kitchen chair, the *Reese* Court explained, "The jacket was not being worn by Reese and therefore, cannot be characterized as an extension of his person so as to propel its search into a search of Reese's person." *Id.* at 911–912. We reject Appellee's assertion that his jeans were not part of the content of the premises because police knew they belonged to Appellee. Appellee's Brief at 11. Such reasoning negates the underpinning of the *Reese* decision. In *Reese*, our Supreme Court, in rejecting a requirement that police distinguish between which articles of clothing and personal property belong to a resident and

---

**3.** Appellee does not challenge the validity of the warrant.

which belong to a visitor before beginning a search, stated:

> [V]isitors to the premises could frustrate the efforts of police by placing contraband among their unworn personal effects **or by announcing ownership of various articles of clothing** and containers in order to place those items beyond the scope of the warrant. We cannot sanction any rule that through fraud and gamesmanship erects barriers to the effective and legitimate execution of search warrants.

*Reese*, 549 A.2d at 911 (emphasis added).

Various state courts have grappled with the question of the proper test to employ in the instant situation, and myriad jurisdictions agree with this Commonwealth's application of the possession test implemented in *Reese* because of the test's simplicity, precision, and the guidance it offers to police and courts. *See, e.g., State v. Gilstrap*, 235 Ariz. 296, 332 P.3d 43 (2014) (search of visitor's purse not in her possession was proper); *State v. Reid*, 190 Or. App. 49, 77 P.3d 1134 (2003) (search of the defendant's jacket that was near him, but not in his possession, was proper); *State v. Leiper*, 145 N.H. 233, 761 A.2d 458 (2000) (warrant authorizing search of premises included authority to search visitor's knapsack where knapsack was not in visitor's possession); *State v. Jackson*, 873 P.2d 1166 (Utah Ct. App. 1994) (search of visitor's purse that was not in visitor's possession was proper); *Cf. State v. Walker*, 350 Or. 540, 258 P.3d 1228 (2011) (*en banc*) (defendant, who was visitor in house being searched, failed to meet burden of demonstrating that search of her purse was not authorized by search warrant). As noted by the *Gilstrap* Court:

> The possession test provides a bright-line rule that is clearly and easily applied. Adding a "constructive" element to the possession test would thwart this goal by requiring law enforcement officers to guess whether items in proximity to a person not identified in the warrant would soon be used by that person.

*Gilstrap*, 332 P.3d at 46. *See generally*, LaFave, *2 Searches and Seizure* § 4.10(b) at 742–748; Johnson, Comment, *Personal Container Searches Incident to Execution of Search Warrants: Special Protection for Guests?*, 75 Temple L. Rev. 313 (2002).

Holding that clothing removed from a person and placed nearby is an extension of his person rather than simply an article of personal property on the premises interjects an element to the *Reese* holding that requires police to guess whether items in proximity to a person not identified in a warrant would soon be used by that person. Because Appellee did not physically possess the pants when officers found them, police were authorized to search them. We hold that the suppression court erred in suppressing the items secreted in Appellee's pants and remand this case to the common pleas court for trial.

Order reversed; case remanded; jurisdiction relinquished.