

# Fourth Court of Appeals
## San Antonio, Texas

### CONCURRING OPINION

No. 04-17-00405-CR

The **STATE** of Texas,
Appellant

v.

Callie Mae **MERRITT**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 6014
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Karen Angelini, Justice
Concurring Opinion by: Luz Elena D. Chapa, Justice

Sitting:    Karen Angelini, Justice
            Luz Elena D. Chapa, Justice
            Irene Rios, Justice

Delivered and Filed: November 28, 2018

The possession test adopted by the majority could undermine the simplicity, precision, and guidance the Supreme Court of the United States has provided to Texas courts and law enforcement officers. Because this case can be analyzed and resolved under precedent handed down by the Supreme Court without adopting any of the tests developed by other jurisdictions, I respectfully concur in the judgment.[1]

---

[1] Because the State does not challenge the trial court's suppression of evidence found in appellant's vehicle, I understand this court's judgment as reversing the trial court's order as to evidence found in appellant's purse only.

## ADOPTING THE POSSESSION TEST IS UNNECESSARY

This case involves a question of whether a law enforcement officer, who is conducting a premises search under a lawfully issued search warrant supported by probable cause, may search a container on the premises even if the officer has a reason to believe the container belongs to a non-suspect visitor. Because this is an issue of first impression in Texas courts, the majority reasonably considers authority from other jurisdictions. The majority notes other jurisdictions have struggled with this issue and adopted at least three different tests to address the question presented in this case: the possession test, the relationship test, and the actual-notice test. *See generally State v. Gilstrap*, 332 P.3d 43 (Ariz. 2014).

The majority adopts the possession test, following the reasoning in *State v. Gilstrap*. *Gilstrap*'s reasoning proceeded in two parts. *Id.* at 46. First, it reasoned that the possession test is aligned with the Supreme Court's decisions in *Wyoming v. Houghton*, 526 U.S. 295 (1999), and *Ybarra v. Illinois*, 444 U.S. 85 (1979), which was discussed in *Houghton. See Gilstrap*, 332 P.3d at 46. Second, the *Gilstrap* court explained "the possession test's simplicity, precision, and the guidance it offers to police and courts make it superior to the relationship and actual-notice tests." *Id.* Because the Supreme Court's decision in *Houghton* is binding on this court, and the Supreme Court of Arizona's decision in *Gilstrap* is not, I would analyze this issue starting with the former authority rather than the latter.

In *Wyoming v. Houghton*, the Supreme Court of the United States addressed an analogous situation in which the Court upheld a search of a vehicle and a passenger's purse when the officer had probable cause to conclude the driver was transporting drugs and had reason to believe the purse belonged to a passenger. *See generally* 526 U.S. 295 (1999). Although before *Houghton*, courts throughout the country had developed the three tests discussed by the majority, the Supreme

Court decided *Houghton* without adopting any one of those tests. *See id.* The *Houghton* majority not only rejected the rationale supporting the relationship and actual-notice tests, but also did not emphasize the passenger's distance from the purse when it was searched, as did Justice Breyer's concurrence. *See id.* at 308 (Breyer, J., concurring).[2] Instead, the *Houghton* majority balanced the passenger's right of privacy with legitimate governmental interests. *See id.* 303-07 (majority op.). That the search did not constitute a "body search" was merely one of several factors the Court considered in conducting its balancing analysis. *See id.*

By following *Gilstrap*, the majority implicitly balances Callie Mae Merritt's right of privacy with the State's legitimate governmental interests, and implicitly favors the latter. This implicit balancing is consistent with *Houghton*. *See id.* at 303-06. But despite the existence of the possession test when *Houghton* was decided, the Supreme Court did not adopt a possession test or approve Justice Breyer's emphasis on the passenger's physical distance from her purse. *See id.* As the Supreme Court was able to analyze the analogous facts of that case without adopting any particular test, so too is this court able to analyze the facts of this case without adopting any particular test. *See id.* Thus, adopting the possession test under the facts of this case is unnecessary and does not strictly follow *Houghton*.

## PROBLEMS WITH THE POSSESSION TEST

The possession test raises numerous questions both from a practical and jurisprudential standpoint. Initially, the origin of the possession test has been traced to *United States v. Teller*, 397 F.2d 494 (7th Cir. 1968). *Gilstrap*, 332 P.3d at 45; WAYNE LAFAVE, ET AL., 2 SEARCH & SEIZURE § 4.10(b) n.69 (5th ed.). But *Teller* did not involve the search of a visitor's purse; it involved the search of a resident's purse. 397 F.2d at 495-98. It is not clear the *Teller* court intended to develop

---

[2] Justice Breyer stated, "[I]n my view also important . . . is the fact that the container here at issue . . . was found at a considerable distance from its owner, . . . ." *Id.*

a possession test and refused to consider the resident's relationship to the premises covered by the search warrant. *See id.*; *but see Gilstrap*, 332 P.3d at 45 (explaining the possession test and the relationship test are two distinct tests). Adopting the possession test would also be inconsistent with the Fifth Circuit's rejection of possession as "the sole criterion which should be used to determine whether a personal item may be searched pursuant to a premises search warrant." *See United States v. Giwa*, 831 F.2d 538, 544 (5th Cir. 1987).

Furthermore, in criminal cases, Texas generally recognizes "possession" is a broad concept. *See Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (requiring the exercise of control, management, or care of an object, and explaining the affirmative links test). While the *Gilstrap* court emphasized the possession test's simplicity and precision compared to the relationship and actual-notice tests, courts throughout the country have struggled for fifty years after *Teller* to provide a simple and precise formulation of the possession test.[3] The lack of precision in the formulation of this test could lead judges, as well as law enforcement officers, to disagree on its application. *Compare United States v. Johnson*, 475 F.2d 977, 978 (D.C. Cir. 1973) (holding that purse on table immediately in front of visitor was not in visitor's possession), *with id.* at 980 (Bazelon, C.J., concurring and dissenting) (concluding the purse was in the visitor's possession). It is also unclear how the possession test should apply when the possessory status of the container changes from the time the premises search begins to the time the purse is searched. *See* LAFAVE, *supra*, at § 4.10(b) n.69. Given the questions the possession test raises, we should not adopt the test if the facts of the case do not require doing so.

---

[3] For example, courts have referred to the possession test as requiring "apparent possession," *United States v. Johnson*, 475 F.2d 977, 978 (D.C. Cir. 1973), "physical possession," *State v. Reid*, 77 P.3d 1134, 1140 (Or. Ct. App. 2003), "actual physical possession," *id.* at 1143, "actual possession," *State v. Jackson*, 873 P.2d 1166, 1169 (Utah Ct. App. 1994) (Orme, J., dissenting), and "immediate possession." *United States v. Robertson*, 833 F.2d 777, 784 (9th Cir. 1987). Other courts have referred to the possession test as a "physical proximity" test. *See, e.g.*, *State v. Leiper*, 761 A.2d 458, 461 (2000).

## ANALYSIS UNDER *HOUGHTON*

The facts of this case do not require adopting the possession test. Noting that its prior "cases turned on the unique, significantly heightened protection afforded against searches of one's person," the Supreme Court in *Houghton* distinguished a container search from a "body search." *See* 526 U.S. at 303 (distinguishing *Ybarra*, 444 U.S. 85, *Terry v. Ohio*, 392 U.S. 1 (1968), and *United States v. Di Re*, 332 U.S. 581 (1948)). Here, there is no direct evidence showing the search of Merritt's purse constituted a body search. The evidence showing that both Merritt and her purse were in the apartment's living room when the purse was searched also does not permit an inference that the search of Merritt's purse constituted a body search. Because this case does not involve "the unique, significantly heightened protection afforded against searches of one's person," this case can be analyzed, like *Houghton*, without adopting the possession test. *See, e.g.*, *Schenk v. State*, No. 05-14-00207-CR, 2015 WL 1243401, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. ref'd) (applying *Houghton* to vehicle search without adopting any other test). The distinction the Supreme Court drew in *Houghton* provides "simplicity, precision, and . . . guidance . . . to police and courts," *cf. Gilstrap*, 235 P3d at 46, but the ambiguities of the possession test risks undermining the virtues of that distinction.

## CONCLUSION

Because the facts of this case can be analyzed under *Houghton* and do not call for the adoption of any particular test, especially when the adoption of such test could undermine the simplicity, precision, and guidance the Supreme Court has provided to Texas courts and law enforcement officers, I respectfully concur in the judgment only.

Luz Elena D. Chapa, Justice

PUBLISH