

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00405-CR

The **STATE** of Texas,
Appellant

v.

Callie Mae **MERRITT**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 6014
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Karen Angelini, Justice
Concurring Opinion by: Luz Elena D. Chapa, Justice

Sitting:        Karen Angelini, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: November 28, 2018

REVERSED AND REMANDED

The State of Texas appeals the trial court's order granting a motion to suppress filed by Callie Mae Merritt. The State contends the trial court erred in granting Merritt's motion because Merritt's "purse, in which the controlled substance was located, was subject to search under a search warrant." We agree with the State and reverse the trial court's order.

## PROCEDURAL BACKGROUND

A magistrate issued a search warrant to search a residential apartment for marijuana. The warrant stated the apartment was in the control of two suspected parties who were listed by name

and authorized the search of "all vehicles and places on the Property under the control of the suspected party on and at said Property where the evidence described in the attached complaint is alleged to be kept and concealed."

Merritt does not dispute the validity of the search warrant. Instead, Merritt filed a motion to suppress claiming she was a visitor at the apartment when the search warrant was executed, and the search warrant did not authorize the officers to search her purse. The trial court held two hearings on the motion to suppress filed by Merritt.

At the first hearing, Merritt was represented by appointed counsel. The affidavit for search warrant, the search warrant, the return and inventory, and the offense report prepared by Detective Tim Bobo, the lead investigator on the case, were admitted into evidence. After hearing the argument of counsel and reviewing the additional case law submitted by the attorneys, the trial court signed an order denying the motion.

After Merritt retained new counsel, additional motions to suppress were filed, and the trial court reconsidered Merritt's motion. In addition to the evidence admitted at the first hearing, the trial court also heard testimony from Detective Kris Kammlah, who was present when the search warrant was executed, and reviewed photographs taken during the execution of the search warrant. After considering the evidence and the argument of counsel regarding the applicable law, the trial court signed an order granting Merritt's motion. The State appeals.

## STANDARD OF REVIEW

"An appellate court applies a bifurcated standard of review to a trial court's ruling on a motion to suppress." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017). "We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Id*. "On the other hand, we apply a de novo standard of review to the legal significance of the facts as found

by the trial court." *Id*. "When findings of fact are not entered, as here, we must view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id*. at 35-36 (internal quotations omitted).

### APPLICABLE LAW

The Texas Court of Criminal Appeals has recognized the following principles applicable to searches of persons present when a search warrant is executed:

> "(1) a warrant to search a premises and to arrest and search specific individuals does not carry with it the right to detain, search or frisk persons found on the premises but not directly associated with the premises and not named or specifically described in the warrant;
>
> (2) to justify the detention and search of a person, other than an occupant, present at the scene of a valid execution of a search warrant, there must be some independent factors, other than mere presence, tying the person to the unlawful activities in the premises;
>
> (3) a frisk of a person merely present at the scene must be justified under *Terry v. Ohio*, 392 U.S. 1 [1968]."

*Worthey v. State*, 805 S.W.2d 435, 438 n.5 (Tex. Crim. App. 1991) (quoting *Conner v. State*, 712 S.W.2d 259, 260 (Tex. App.—Austin 1986, pet. ref'd)). The ongoing validity of these principles is questionable as they pertain to the ***detention*** of a visitor present on the premises when a search warrant is executed. *See, e.g., Michigan v. Summers*, 452 U.S. 692, 705 (holding "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted"); *Montez v. State*, No. 02-13-00069-CR, 2014 WL 3536804, at *4 (Tex. App.—Fort Worth July 17, 2014, no pet.) (not designated for publication) (noting officers may detain individuals incident to the execution of a search warrant "so long as the individual is found within or immediately outside a residence at the moment the officers execute the warrant"); *Mottley v. State*, 841 S.W.2d 550, 551 (Tex. App.—

Houston [1st Dist.] 1992, no pet.) ("Appellant's presence on the premises was a specific and articulable fact which gave rise to a rational inference that appellant was an occupant of the premises, and sufficed to permit the police officers to detain appellant briefly to ascertain whether appellant was indeed an occupant of the premises."); *but see Martin v. State*, 761 S.W.2d 26, 29 (Tex. App.—Beaumont 1988), *remanded for harm analysis*, 764 S.W.2d 562 (Tex. Crim. App. 1989) ("It is also clear that the word 'occupant' as used by the Supreme Court in *Summers* does not include a mere visitor."). However, we have found no cases questioning the principles as they pertain to the **search** of a visitor. Instead, we have found cases relying on the principles to determine whether a search of a visitor was justified. *See Bell v. State*, 845 S.W.2d 454, 457-59 (Tex. App.—Austin 1993, no pet.) (applying principles to search of person on front porch of premises to be searched); *Martin*, 761 S.W.2d at 28-30 (applying principles to search of person officers knew was a visitor); *see also Thomas v. State*, 884 S.W.2d 215, 218 (Tex. App.—El Paso 1994, pet. ref'd) (applying principles to person hiding in closet).

Although the Texas Court of Criminal Appeals has not recently addressed these principles, the Supreme Court of Arizona provided an excellent analysis of the current state of the law in *State v. Gilstrap*, 332 P.3d 43 (Ariz. 2014). Quoting Fifth Circuit precedent, the court first noted, "'[S]pecial concerns arise when the items to be searched belong to visitors, and not occupants, of the premises' because these 'searches may become personal searches outside the scope of the premises search warrant.'" *Id*. at 44 (quoting *United States v. Giwa*, 831 F.2d 538, 544 (5th Cir.1987)); *see also Ybarra v. Illinois*, 444 U.S. 85, 91-92 (1979) (asserting that although a search warrant gave officers authority to search tavern and suspect named in the warrant "it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers" because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person"). The court

further noted, "Courts determining whether a premises search warrant permits the search of a visitor's belongings have usually adopted one of three approaches: the possession test, the relationship test, or the actual-notice test." *Gilstrap*, 332 P.3d at 44.

"Under the possession test, officers may search personal items, such as purses or clothing, that are not in their owners' possession when police find them in executing a premises search warrant." *Id*. at 44-45. Under this test, "the search of a personal item like a purse is not regarded as a search of the person when the item is not in the person's possession." *Id*. at 45. "Several jurisdictions have adopted the possession test." *Id*. (citing *United States v. Branch*, 545 F.2d 177, 181-82 (D.C. Cir.1976) (search of a shoulder bag that was being worn was improper); *United States v. Johnson*, 475 F.2d 977, 979 (D.C. Cir. 1973) (search of purse resting separately from its owner, was not "worn" and therefore the search was proper); *State v. Reid*, 190 Or. App. 49, 77 P.3d 1134, 1143 (2003) (search of defendant's jacket that was near him, but not in his possession was proper); *State v. Jackson*, 873 P.2d 1166, 1169 (Utah Ct. App.1994) (search of purse not in possession of visitor was proper)).

"Other jurisdictions have rejected the possession test" and choose "'to examine the relationship between the person and the place.'" *Id*. (quoting *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir.1973)). Those cases look to whether the person being searched had a "special relation" to the premises for which the search warrant was issued. *See id*. (citing *United States v. Young*, 909 F.2d 442 (11th Cir. 1990) (concluding that the relationship test was "more reasonable" than the possession test and holding that officers acted within scope of a premises warrant by searching purse of a person who lived at the premises but fled as officers arrived); *United States v. McLaughlin*, 851 F.2d 283 (9th Cir.1988) (finding that the co-owner of business searched with valid warrant had a sufficient relationship to the premises to allow police to search briefcase); *Giwa*, 831 F.2d at 545 (concluding that the search of defendant's bag was appropriate because he

was sleeping at the residence when police knocked and he opened the door clad in a bathrobe and slacks, factors tending to show he was more "than just a temporary presence in the apartment")).

Finally, the Arizona Supreme Court noted "a few jurisdictions have adopted a third approach, the actual-notice test." *Id.* "This test derives from the relationship test, but instead of focusing on the relationship between the visitor and the premises, it focuses on the notice given to police regarding an item's ownership before it is searched." *Id.* "This test allows police to search an item that may contain the object of a premises warrant unless they are put on notice that the item belongs to a non-resident." *Id.* (citing *Waters v. State*, 924 P.2d 437, 439 (Alaska Ct. App. 1996) (finding search of defendant's coin purse proper because no "circumstances provid[ed] clear notice that the purse actually belonged to [defendant]"); *People v. McCabe*, 144 Cal. App. 3d 827, 192 Cal. Rptr. 635, 637 (1983) (finding search of purse was proper because police had no facts that "would have put them on notice that the purse belonged to a non-resident"); *State v. Lambert*, 238 Kan. 444, 710 P.2d 693, 697-98 (1985) (finding search of purse improper because officers had no reason to believe that the purse belonged to the person named in the warrant); *State v. Thomas*, 818 S.W.2d 350, 360 (Tenn. Crim. App. 1991) (finding search improper because officers "knew or should have known" that the purse belonged to a non-resident)).

After discussing the three tests, the Arizona Supreme Court adopted the possession test reasoning:

> After considering each test, we conclude that the possession test provides the best approach. It aligns with the Supreme Court's decisions in *Ybarra* and *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Ybarra limits the principle that a premises warrant authorizes police to search any item that might contain the object of the search by holding that the warrant does not authorize the search of a person it does not name. 444 U.S. at 92–93, 100 S.Ct. 338. This reflects that searches of a person involve a higher degree of intrusiveness and require justification in addition to that provided by the probable cause that supports a premises warrant. Even though the search of certain personal items, such as a purse, can in some circumstances amount to the search of a person, *Houghton* recognizes that they are not such a search when the item is not in the

owner's actual possession. *Houghton*, 526 U.S. at 305–06, 119 S.Ct. 1297. Although *Houghton* is not dispositive because it concerned a vehicle search, "the thrust and tone of the Court's analysis leaves little doubt that, if faced with the question, the Court would endorse a 'physical possession' test for searches of premises." *Reid*, 77 P.3d at 1141.

Additionally, the possession test's simplicity, precision, and the guidance it offers to police and courts make it superior to the relationship and actual-notice tests. *See Micheli*, 487 F.2d at 431 (1st Cir.1973) (noting that "[The possession test] has the virtue of precision"); *State v. Leiper*, 145 N.H. 233, 761 A.2d 458, 462 (2000) (finding that the possession test minimizes "the potential for fraud and gamesmanship during the execution of search warrants when parties not named in the warrant are present at the location of a search"); *Reid*, 77 P.3d at 1140 (observing that courts that have adopted the possession test "have emphasized its simplicity and clarity"). Searches often occur in harried, dangerous circumstances and officers may not be readily able to identify the relationships between persons and the premises or to assess whether items might belong to someone not named in the warrant.

The relationship and actual-notice tests are more difficult for police to navigate and for courts to administer. *See Leiper*, 761 A.2d at 462 (concluding that "the relationship/notice test is so nebulous it provides little guidance to police officers or trial courts"); *Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909, 911 (1988) (explaining that the relationship test would make it "impossible for police to effectively search a premises where visitors are present because they would not know which items, clothing and containers could be searched and which could not be searched"); *Jackson*, 873 P.2d at 1168 (explaining that the relationship test would require officers "to ascertain the ownership of each item or container in the premises ... [then] determine whether the owner of the item or container was merely a 'transient visitor' or whether there was some greater connection to the premises").

We agree with the Arizona Supreme Court that the possession test provides the best approach for determining whether a premises search warrant permits the search of a visitor's belongings. Therefore, we next apply the possession test to the facts in the instant case to determine whether the search warrant permitted the search of Merritt's purse.

## DISCUSSION

The evidence presented to the trial court regarding the location of Merritt's purse was conflicting. The officer's return stated Merritt was detained in the living room, and further stated:

> The small black purse located in the living room was determined to belong to Merritt after her Texas driver's license was located inside of it. Merritt also identified the purse as belonging to her and informed me she was only visiting and

did not live in the apartment. Since Merritt did not have custody of the purse when Police entered it was subject to search under the search warrant.

Detective Kammlah testified when the officers entered the apartment Merritt was with one of the named suspects in a bathroom where the named suspect was attempting to destroy evidence by flushing it down the toilet. Detective Kammlah also testified Merritt complied with the officers' commands to exit the bathroom and walk toward the living room. Finally, Detective Kammlah testified Merritt's purse was on the kitchen table.

Although the trial court could choose to disbelieve Detective Kammlah's testimony, the only implied finding supported by the record was that Merritt was detained in the living room, and her purse was also present in the living room. *Ramirez-Tamayo*, 537 S.W.3d at 35-36 (noting we must "assume that the trial court made implicit findings of fact that support its ruling ***as long as those findings are supported by the record***") (emphasis added). The record does not support an implied finding that Merritt was in possession of her purse because the offense report states Merritt did not have custody of her purse.

Having adopted the possession test for determining whether a premises search warrant permits the search of a visitor's belongings, we hold the search warrant in this case authorized the officers to search Merritt's purse because the record does not support an implied finding that the purse was in her possession. Accordingly, we hold the trial court erred in granting Merritt's motion to suppress.

### CONCLUSION

The trial court's order is reversed, and the cause is remanded to the trial court for further proceedings.

Karen Angelini, Justice

PUBLISH