J-A14034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TINA SUE MCKAHAN | : | No. 10 WDA 2019 |

Appeal from the Suppression Order Entered November 28, 2018
in the Court of Common Pleas of Greene County
Criminal Division at No(s):  CP-30-CR-0000096-2018

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 16, 2019**

The Commonwealth of Pennsylvania appeals from the Order granting the Motion to Suppress filed by Tina Sue McKahan ("McKahan") in this driving under the influence of alcohol ("DUI") case.  We reverse and remand for further proceedings.

The suppression court set forth the relevant facts underlying this appeal as follows:

> [O]n January 30, 2018, at approximately midnight, [] Officer [Maggie] Vorum [("Officer Vorum") of the Waynesburg Borough Police,] while traveling east on [R]outes 21 and 18 [in Greene County], came upon [McKahan's vehicle].  [McKahan] was involved in a roll-over accident, and [Officer Vorum] and certain civilian bystanders observed [McKahan] pinned under her vehicle, a [J]eep.[1]  As a result of that incident, [McKahan] was

---

[1] After the bystanders and Officer Vorum had extracted McKahan from the vehicle, Officer Vorum detected a strong odor of alcoholic beverages on McKahan's person.  Officer Vorum did not have McKahan perform any field sobriety tests due to the severity of her injuries.

trans[port]ed to Ruby Memorial Hospital, a trauma facility, located in the state of West Virginia, approximately twenty [] miles from the scene of the accident.

[Officer] Vorum contacted the on-call [magisterial] district judge in Greene County, in an effort to determine how she may obtain [McKahan's] blood, in the event that blood had been drawn for medical purposes. In that effort, [P]atrolman Bill Nichols, also of the Waynesburg Borough Police Department, contacted the Greene County District Attorney's Office. [Officer Vorum] [telephoned] the emergency room at Ruby Memorial [Hospital], [and] a female answered and indicated that [McKahan] was being treated. … [Officer Vorum] did not ask for [McKahan's] blood to be drawn[, nor did any other officer. Rather, McKahan's blood was drawn per regular hospital protocol for trauma patients].

Order, 9/5/18, at 2-3 (unnumbered) (footnote added, some paragraph breaks and capitalization omitted).

After Officer Vorum had returned to the police station immediately following the accident, she prepared a police report and a memo, both of which she faxed to West Virginia State Trooper First Class M.A. Broadwater ("Trooper Broadwater"). Trooper Broadwater then prepared and submitted an Affidavit and Complaint for Search Warrant. Notably to this appeal, Trooper Broadwater stated therein that police sought disclosure of "[a]*ll medical records* of every nature pertinent in any way to any medical treatment rendered on behalf of [] McKahan [] since 01/29/2018, … including, but not limited to … [r]esults of all laboratory tests[.]" N.T., 8/30/18, Exhibit 1, page 1 (emphasis added). A West Virginia magisterial district judge executed the search warrant on January 30, 2018.

Upon receiving the search warrant, the hospital sent McKahan's toxicology blood test report to Officer Vorum via a compact disk ("the CD").[2] The blood test result showed that McKahan had a blood alcohol content ("BAC") of .193% after the crash. Thereafter, Officer Vorum charged McKahan with two counts of DUI,[3] as well as careless driving, driving while operating privilege is suspended or revoked, and operation of a motor vehicle without required financial responsibility.[4]

On July 20, 2018, McKahan filed a Motion to suppress evidence, including her blood test results, asserting, in relevant part, that the search warrant was facially unlawful as being overly broad. Specifically, McKahan pointed out that the search warrant improperly authorized disclosure of *all* of her medical records.

The suppression court conducted a suppression hearing on August 30, 2018, wherein Officer Vorum and McKahan testified. By an Order entered on November 28, 2018, the suppression court granted McKahan's Motion to suppress. Therein, the suppression court found, in relevant part, as follows:

---

[2] It appears from the record that the CD contained additional medical records for McKahan, aside from the toxicology report. **See** N.T. (suppression hearing), 8/30/18, at 11 (wherein counsel for McKahan stated that the CD contained 138 pages of medical records). **But see also id.** at 10 (wherein Officer Vorum stated that the only medical record that she had reviewed was the toxicology report).

[3] **See** 75 Pa.C.S.A. § 3802(a)(1), (c).

[4] **See** 75 Pa.C.S.A. §§ 3714(a), 1543(a), 1786(f).

> Officer Vorum did have probable cause to believe that [McKahan] was driving under the influence. The [c]ourt also determines that the search warrant[,] as issued[,] was overly broad[,] as it sought [McKahan's] complete medical records. The warrant was not narrowly tailored and the Commonwealth had probable cause only to obtain [McKahan's] chemical test results showing levels of blood and/or controlled substances.

Order, 11/28/18, at 1-2. The court ruled that the search warrant was unconstitutional for its overbreadth, relying on **Commonwealth v. Rivera**, 816 A.2d 282, 290 (Pa. Super. 2003) (stating that "[a] warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. An overbroad warrant is unconstitutional because it authorizes a general search and seizure." (citation and ellipses omitted)). In response, the Commonwealth timely filed a Notice of Appeal,[5] followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

The Commonwealth now presents the following issue for our review:

> Did the lower court err in determining [that] the medical blood alcohol results should be included in its suppression Order[,] upon finding that the out-of-state agency assisting the investigating officer exceeded the request of the investigator[,] and applied for an overly-broad search warrant for the entire medical record of

---

[5] In filing this interlocutory appeal, the Commonwealth complied with Pennsylvania Rule of Appellate Procedure 311(d), which provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d); **Commonwealth v. Petty**, 157 A.3d 953, 954 n.1 (Pa. Super. 2017).

the driver transported to an out-of-state trauma center following a suspected DUI crash?

Brief for the Commonwealth at 4 (capitalization omitted).

This Court has summarized the proper scope and standard of review when reviewing the grant of a suppression motion as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Boyd*, 17 A.3d 1274, 1276 (Pa. Super. 2011) (citations omitted).

It is axiomatic that

> [a] search warrant cannot be used as a general investigatory tool to uncover evidence of a crime. Nor may a warrant be so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize, which would result in the general "rummaging" banned by the Fourth Amendment.

*Commonwealth v. Rega*, 933 A.2d 997, 1011 (Pa. 2007) (internal citations omitted); *see also Commonwealth v. Johnson*, 33 A.3d 122, 125 (Pa. Super. 2011) (stating that the requirement for specificity in a warrant has not been strictly construed, but has been historically tempered by the rule that search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations).

Here, the Commonwealth challenges the suppression court's ruling that the search warrant was unlawful and unconstitutionally overbroad, and the court's suppression *all* of the medical evidence, and particularly, the BAC results in McKahan's toxicology report. **See** Brief for the Commonwealth at 13-17. The Commonwealth further argues that

> [t]he extreme remedy of suppressing the entire medical record, to include the [BAC] results, might have been appropriate if the [suppression] court found some misconduct on the part of [the police,] or evidence that law enforcement officials had embarked upon a "fishing expedition" for other evidence of the commission of a crime.

*Id.* at 17. However, the Commonwealth urges, no such impropriety occurred here, and the suppression court thus should have not suppressed the toxicology report. *Id.*; *see also id.* at 16 (wherein the Commonwealth asserts that this evidence "could have been obtained through inevitable discovery[.]").

We conclude that the suppression court improperly viewed the search warrant in a hypertechnical fashion in suppressing all of the medical evidence, including the BAC results. **See Johnson**, **supra** (emphasizing that search warrants should not be invalidated by hypertechnical interpretations); Pa.R.Crim.P. 205, cmt.; **see also Commonwealth v. Clark**, 28 A.3d 601, 1291 (Pa. 2011) (stressing the need for practical, totality-of-the-circumstances approaches to search warrants). Although the section of the search warrant identifying the items to be searched and seized states, "[a]ll medical records of every nature pertinent in any way to any medical treatment

- 6 -

rendered on behalf of [] McKahan[,]" it states immediately thereafter that the request specifically concerned records "*since 01/29/2018*[,]" including "[r]esults of all laboratory tests[.]" N.T., 8/30/18, Exhibit 1, page 1 (emphasis added). Though Trooper Broadwater should not have phrased the search warrant to pertain to "all" of McKahan's medical records, this was merely inartful drafting, and does not render the warrant unlawful. Therefore, we reverse the suppression court's Order, and hold that the toxicology report showing McKahan's BAC, alone, is admissible on remand.[6]

Order reversed; case remanded for further proceedings; jurisdiction relinquished.

Judge Ott concurs in the result.

Judge Kunselman files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2019

_____

[6] On remand, any medical records on the CD aside from the toxicology report are not relevant and must be excluded.