J-S16027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SHELDON FITZGERALD SMALL | : | No. 1321 MDA 2021 |

Appeal from the Order Entered September 15, 2021,
in the Court of Common Pleas of York County,
Criminal Division at No(s):  CP-67-CR-0001546-2020.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: JULY 20, 2022**

The Commonwealth appeals from the order suppressing a firearm that police seized from Sheldon Fitzgerald Small during a vehicle search.[1]  The court of common pleas suppressed the firearm under the doctrine of the fruit of the poisonous tree, because it found that the police discovery the gun as part of an unconstitutional search.  We affirm.

On February 4, 2020, Mr. Small was riding in the front passenger seat of a vehicle in York County.  Police stopped the car for a violation of the Vehicle Code and smelled the odor of cannabis wafting from the car.  They commenced a warrantless vehicle search, which the parties agree was unconstitutional.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) (holding that vehicle-search exception to the warrant requirement is unconstitutional, unless there are exigent circumstances).  *Alexander* was decided after the events at issue here.  Thus, the police conducted their warrantless search pursuant to the law that existed at the time.

An officer testified as to how they conducted that search. First, they ordered the driver and Mr. Small to exit the vehicle "as part of [their] investigation" into the smell of cannabis. N.T., 6/8/21, at 15. The officer explained that (1) Mr. Small had no choice but to exit the vehicle and (2) they ordered him to exit, "because [the police] were going to search the car for [cannabis.]" *Id.* at 24. According to the officer, Mr. Small was not free to leave at that point. *See id.* at 25.

Next, they asked Mr. Small if he had anything on him. He said that he had a gun, and an officers seized it. The police then rummaged around the car but found nothing relevant to this appeal.

The Commonwealth charged Mr. Small with various crimes, including person not to possess a firearm and carrying a firearm without a license.[2] He moved to suppress the evidence, and the suppression court granted his motion. This timely interlocutory appeal followed, under Pa.R.A.P. 311(d).

The Commonwealth raises one issue: "Did the suppression court err in finding that the firearm found on [Mr. Small] was fruit of the poisonous tree, when the firearm was in fact discovered and recovered prior to the warrantless search of the vehicle?" Commonwealth's Brief at 4.

As the Commonwealth's framing of the issue suggests, it bases its argument upon the factual premise that the officer's directive for Mr. Small to exit the vehicle (and the question about whether he was carrying anything)

---

[2] *See* 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1).

was a separate event from the vehicle search. However, the suppression court found that the order for Mr. Small to step outside the car was the first step of the unconstitutional vehicle search. Thus, the Commonwealth essentially asserts a version of the facts that differs from the suppression court's factual finding. The Commonwealth may not rely upon its own version of the facts when it is the appellant.

This Court reviews an order granting suppression by accepting as true the "suppression court's findings of fact . . . if the record supports those findings." **Commonwealth v. Petty**, 157 A.3d 953, 955 (Pa. Super. 2017). Rather than reevaluate the facts, we ask only "whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." **Id.** Hence, it is inappropriate for this Court to substitute the Commonwealth's view of the facts for that of the suppression court, if the record supports the suppression court's findings.

After hearing the testimony of the arresting officers, the suppression court found the following facts:

> Given the foregoing testimony, it was clear . . . that "but for" the actions of the police to initiate a search of the vehicle, [Mr. Small] would not have been asked to exit the vehicle, would not have been asked if he had anything on him, and the firearm would not have been discovered. Thus, the intent to search the vehicle was the catalyst for discovering the firearm.

Trial Court Opinion, 12/27/22, at 3.

Hence, the suppression court based its legal analysis of the poisonous-tree doctrine upon its factual finding that the officers' decision to conduct a warrantless search of the vehicle uncovered the gun. The suppression court's factual finding on causation has adequate support in the record. One of the officers testified that the police ordered Mr. Small to step outside the vehicle "as part of [their] investigation" into the smell of cannabis. N.T., 6/8/21, at 15. Furthermore, the officer explained that Mr. Small was required to exit the vehicle, "because [the police] were going to search the car for [cannabis.]" *Id.* at 24.

Thus, the record supports the suppression court's finding that, but for the police officers' decision to initiate an unconstitutional search of the vehicle, Mr. Small would have remained in the car and never disclosed that he had a gun. That factual finding binds this Court. **See Petty**, **supra**. Therefore, we may not view the case from the factual perspective of the Commonwealth — *i.e.*, that the order for Mr. Small to exit the car and the search of the car were distinct events. The former was part of the investigation into the latter. **See** N.T., 6/8/21, at 15.

Based on this factual finding, the suppression court correctly applied the exclusionary rule under **Wong Sun v. United States**, 371 U.S. 471 (1963) and **Commonwealth v. Edmunds**, 586 A.2d 887 (Pa. 1991) (holding that the good-faith exception to the warrant requirement is incompatible with the heightened privacy protections found in Article I, § 8 of the Pennsylvania constitution). To determine if suppression is required under the fruit-of-the-

poisonous-tree doctrine the question is "whether, granting establishment of the primary illegality, the evidence [was discovered] by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." **Wong Sun**, 371 U.S. at 488.

The Commonwealth attempts to purge the order that Mr. Small exit the vehicle from the tainted vehicle search. It relies on case law allowing police to ask drivers and passengers to exit vehicles during traffic stops without any reasonable suspicion or probable cause. **See** Commonwealth's Brief at 11 (citing **Commonwealth v. Brown**, 654 A.2d 1096, 1102 (Pa. Super. 1995)). While the Commonwealth is correct that the officers could have done this, the fact remains they did not.

As explained above, the officers asked Mr. Small to exit the vehicle as part of their investigation into smell of cannabis. That investigation was rendered unconstitutional by the officers' failure to get a warrant. Hence, on the unique facts of this case, the police discovered the gun "by exploitation of that illegality," rather than by their authority to ask someone to step outside the vehicle during a legal traffic stop.

Moreover, Mr. Small was not free to leave the scene of the traffic stop once the officers ordered him to exit the vehicle. **See** N.T., 6/8/21, at 25. "For purposes of the Fourth Amendment, a person is 'seized' when . . . he [is] not free to leave." **Commonwealth v. Brame**, 239 A.3d 1119, 1128 (Pa. Super. 2020), *appeal denied*, 251 A.3d 771 (Pa. 2021). Because the officer admitted that, once they ordered Mr. Small to exit the vehicle, he was not free

to leave, the police seized him for Fourth Amendment purpose at that point. Mr. Small was a passenger in the car. Accordingly, seizing his person was necessarily unrelated to the traffic stop, because the traffic stop was due to a violation of the Vehicle Code that the driver had committed.

We therefore hold that the officers' interaction with Mr. Small escalated from a mere encounter to an investigative detention when they ordered him to exit the car. "To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion." *Id.* at 127. Here, the parties agree no such reasonable suspicion about Mr. Small existed.

Thus, the Commonwealth's contention on appeal that police discovered the gun as part of initial traffic stop and an incidental request for Mr. Small to exit the vehicle is belied by the record. The officer's testimony established and the suppression court reasonably found that the police discovered the gun as part of the vehicle search and not the initial traffic stop. As such, reliance by the Commonwealth upon cases such as *Brown*, *supra*, is misplaced. The suppression court rightly suppressed the firearm that the officers recovered from Mr. Small.

Order affirmed.  Case remanded for further proceedings.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2022