J-A28005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERALD NEAL | : | No. 1336 EDA 2022 |

Appeal from the Order Entered April 22, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0001793-2019

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 20, 2023**

The Commonwealth of Pennsylvania appeals from the order granting Gregory Neal's omnibus pretrial motion to suppress statements he made to Pennsylvania State Troopers while in custody. The trial court found that the Troopers continued to question Neal after he invoked his right to silence. After careful review, we affirm.

The essential facts underlying this appeal are not in dispute. Pennsylvania State Police sought to question Neal concerning the shooting death of Neal's paramour, Jeanette Sancho. Neal was subsequently detained in Flushing, New York. Two Pennsylvania State Police Troopers, Trooper Brian Noll and Trooper Brian Janoski, drove to the police station in Jamaica, New York to interview Neal.

The Troopers identified themselves to Neal, informed him that they were investigating Sancho's death, and then provided **Miranda**[1] warnings to Neal. The Commonwealth concedes that, at this point, Neal invoked his right to remain silent, but argues that Neal, "a sophisticated criminal," then "initiated further communication" with the Troopers. Appellant's Brief, at 9. In contrast, the trial court concluded that the Troopers failed to honor Neal's invocation of his right to remain silent, and therefore suppressed the entirety of the interview. The Commonwealth filed this timely interlocutory appeal, certifying that suppression of the statement would substantially handicap the prosecution of its case pursuant to Pa.R.A.P. 311(d).

On appeal, the Commonwealth contends that Neal "reinitiated a discussion with the Troopers" and the circumstances reflect that Neal made "a free and deliberate choice … to engage the police in a long-winded and mostly random discussion, not a confession obtained through intimidation, coercion or deception." Appellant's Brief, at 9.

We review an order suppressing evidence *de novo*. **See Commonwealth v. Petty**, 157 A.3d 953, 955 (Pa. Super. 2017). However, the suppression court's findings of fact are binding on appeal if they are supported by the record created at the suppression hearing. **See id**. The Commonwealth bore the burden of establishing that Neal knowingly and

---

[1] **Miranda v. Arizona**, 384 U.S. 436, 467–69 (1966).

voluntarily waived his right to silence. *See Commonwealth v. Baez*, 21 A.3d 1280, 1283 (Pa. Super. 2011) (citation omitted).

We begin by noting that a hearing on Neal's suppression motion was scheduled for March 7, 2022. While it is undisputed that some form of hearing occurred that day, it was not transcribed and therefore is not of record. Neither party disputes the trial court's statement that "the Commonwealth submitted a thumb drive containing … a video/audio recording and a transcript" of the June 6, 2019 interrogation of Neal. This thumb drive is in the certified record. As neither the parties nor the trial court reference evidence outside the interrogation itself, we conclude that the deficiencies in the record do not hinder our ability to review the Commonwealth's issue on appeal.[2]

We have reviewed both the transcript of the interrogation and the video/audio recording itself and conclude that there are no meaningful differences between them. The recording does provide additional context in that it reveals the length of pauses between questions and answers, as well as the time spent by Trooper Noll in responding to Neal's invocation of his right to silence. Based on this review, we note that when the Troopers asked Neal to sign a waiver of his *Miranda* rights, Neal stated, "I wish to adhere to

_____

[2] As the appellant, "the ultimate responsibility of ensuring that the transmitted record is complete" rested squarely with the Commonwealth. *See Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*).

my rights. … I haven't a desire to speak." Transcript of interview, 6/6/2019, at 6.

The Commonwealth does not dispute that this statement constituted an invocation of Neal's right to silence. *See* Appellant's Brief, at 12. Rather, the Commonwealth correctly argues that even though Neal invoked his right to silence, he still retained the power to waive this right. *See Commonwealth v. Frein*, 206 A.3d 1049, 1065 (Pa. 2019). An explicit statement of waiver is not necessary. *See Commonwealth v. Bomar*, 826 A.3d 831, 843 (Pa. 2003). Instead, "[w]aiver can be clearly inferred from the actions and words of the person interrogated." *Id.* (citations omitted). "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his right to cut off questioning was scrupulously honored." *Frein*, 206 A.3d at 1065 (citation and internal quotation marks omitted).

There are few bright-line standards in determining whether a defendant has waived his previously invoked right to silence; each case must be addressed based on its own particular circumstances. *See id.* To the extent there are standards, they are the same regardless of whether the accused invoked their right to silence or their right to counsel. *See id.* at 1066; *see also Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (noting that "there is no principled reason to adopt different standards" for the right to silence in contrast to the right to counsel").

One bright-line standard that does exist is that the Commonwealth cannot establish a valid waiver of the right to silence "by showing only that [the defendant] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *See Frein*, 206 A.3d at 1065 (citation and italicization omitted). In other words, if "an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 1064 (citation and internal quotation marks omitted).

Here, Trooper Noll responded to Neal's invocation of his right to silence by encouraging Neal to cooperate with the investigation:

> Okay. Like we said, that's – that's your right, you don't have to talk to us. [Basically, the deal is] out in the area [of] Saw Creek [and] again, I think what you kind of have an idea of what we're … talking to you about, but they – they found Jeanette, right? … [S]o basically we're trying to figure out what went wrong here and … why Jeanette's out there.

> [Again,] there's – there's nothing that says that … we gotta force you here, but … everybody's got their reasons on that. As we go through it here, all this stuff is gonna kind of spin out of control. So this is kind of your opportunity now if you [have anything to] discuss, now would be the time to do it. And like I said, this … kind of thing gets out of control real quick. Before you know it, some like pencil neck reporter is putting words in your mouth and … making things more exaggerated than they might've been.

> You had a bit of a … trying week here, right, up and down the east coast. Some … shit went down, right? We're at the point now, I think we're all on the same page, we know what went down. The issue is why did it – why did it go down. Right?

> And like I said, the ball is kinda in your court, we … can't make you say anything to us, but at the same time, I gotta tell

you, I'm at the very least curious as to what's going on. I don't know if … you're wronged in some kind of way. I'd like to talk to you about it. Like I said, we made the trip out here from … Pennsylvania specifically for this reason, to get kind of your side of the story here. Everybody's got a side of the story, right? I've been doing this job for about 10 years now. There is no black and white, there is no cut and dry, … but again, that … ball's in your court here.

…[I]f this was something that's gonna be like a complete shock to everybody, I … can understand maybe you not wanting to get your side out there, but we're at the point now where, like I said, that they're … spending money to send the troopers out here from Pennsylvania to talk to you, it's … for a reason. …[W]e're just trying to get to the bottom as far as what that … reason might be. And if it's something that, … you know, hey, it's certainly possible that it's something that is … misconstrued on our end, it's certainly possible that … some of this other stuff that we want to talk to you about is just … we don't know … that's why we wanna talk to you.

The only one who has the … answers … is you, as far as the – the reasoning for … this stuff going down here, right? When I come back to Pennsylvania, that's the first thing my boss is gonna ask me. He's gonna say, hey, how was Gerald?

I'm gonna say, hey, you know what, the … guys out in New York, they said he was fine with them, cooperative, no issues; but the next question everybody's just gonna have is, what the hell happened, you know, the why. I don't think any of this stuff was … planned, I think something kind of escalated here. I know that you're under a tremendous amount of stress right now, right? What's the deal with … this warrant down in … Virginia? I guess there was supposed to be something down there as far as … a sentencing down there? Was that a sentencing or was that a trial date? They said –

Transcript of interview, 6/6/2019, at 6-9. At this point, Neal interrupted Trooper Noll to answer the Trooper's question about a sentencing proceeding in Virginia. *See id.* at 9.

The Commonwealth argues that Neal's response to Trooper Noll's query about sentencing dates in Virginia establishes that Neal voluntarily waived his right to silence. Much like the trial court, we disagree.

In **Frein**, our Supreme Court faced a similar issue. There, the defendant, Frein, also invoked his right to silence after being asked to sign a written waiver of his **Miranda** rights. **See Frein**, 206 A.3d at 1066-67. Despite this, Troopers continued to question him. **See id**. at 1067. Frein then asked the Troopers if they were fathers. **See id**. After the Troopers answered his question, they continued to question him about the murder for which he was arrested. **See id**. Frein made several inaudible comments before once again invoking his right to silence. **See id**. at 1067-68. Troopers once again resumed questioning Frein, leading to several inculpatory statements. **See id**. at 1068.

The Supreme Court of Pennsylvania held that Frein's right to silence had been violated by the continued interrogation. **See id**. at 1069. To support its conclusion, the court highlighted two circumstances. First, the court noted that "there was no break in the questioning once [Frein] stated that he did not want to talk about the crimes, or, indeed, at any time during the interview." **Id**. (italicization omitted). Second, the Troopers "did not remind [Frein] that he had a right not to speak." **Id**. at 1070.

Here, as in **Frein**, there was no break in the questioning. Also similar to **Frein**, Trooper Noll did not re-warn Neal before asking him further questions. Further, unlike **Frein**, Neal did not ask Trooper Noll a question. **See id.** at

1069. Instead, Neal merely answered a question posed to him *after* he had already invoked his right to silence. In our view, asking a question during a coercive interrogation is more indicative of a voluntary action than answering one.

We cannot conclude that, under these circumstances, Neal's invocation of his right to silence was scrupulously honored. The interrogation never ceased after he invoked his right to silence. In fact, Neal sat in silence for four minutes while Trooper Noll spoke until Trooper Noll directed questions at Neal about a sentencing hearing in Virginia, and Neal responded. ***See*** Transcript of interview, 6/6/2019, at 9. From that point forward, for over two hours, without pause or break, the Troopers continued asking Neal questions about a variety of subjects including the crimes for which he was a suspect.

Further, this disregard for Neal's invocation of his right to silence was only enhanced when, 27 minutes into the interrogation, Neal once again began to invoke his right to remain silent:

| Trooper Noll: | If we're saying now, we perceive that, uh, Jeanette is deceased and you're the one who caused her to be that way. |
|---|---|
| Mr. Neal: | Then I would say that[,] before I speak on anything regarding that[,] and I have the right to remain— |
| Trooper Noll: | Like I said, this whole time -- this whole time I've been sitting here, you --- you don't -- you don't have to talk to us, but like I said, you're -- you're -- you're a man of -- of philosophical endeavors here. You say you -- you believe in reaping what you sow, you believe that maybe |

- 8 -

> -- maybe you believe that what you did wasn't
> -- wasn't wrong. Like I said, if you can help me
> to understand --

*Id.* at 37-38. It is clear from the recording that Neal intended to once again invoke his right to remain silent. However, Trooper Noll interrupted him before he could finish the sentence.

This pattern repeated when, over two hours into the interrogation, Neal began to indicate that he wanted to consult an attorney before speaking more, but Trooper Noll once again interrupted him:

Trooper Noll:    No, you shooting Terrance and you shooting Jeanette. We're so fucking far beyond this, Gerald, right now, come on, man. What are you concerned about? What are you worried about? Tell me. What's holding you back?

Mr. Neal:    My attorney conversation.

Trooper Noll:    What did he say?

Mr. Neal:    I ain't have it.

Trooper Noll:    Okay.

Mr. Neal:    I just want to have a conversation with--

Trooper Noll:    What's -- what's that gonna change? Doesn't -- doesn't change the facts, it doesn't change what happened, right? Do you think it changes the facts?

*Id.* at 180-81.

Viewing the interrogation as whole, we cannot conclude that the Troopers ever scrupulously honored either Neal's first invocation of his right to silence or his multiple subsequent attempts to invoke his ***Miranda*** rights.

Further, we cannot accept the Commonwealth's argument that Neal's apparent relaxed manner and willingness to discuss esoteric subjects with the Troopers vitiates the Troopers' failure to scrupulously honor Neal's invocation of his right to silence. As such, we can find no fault in the trial court's conclusion that the entirety of the interrogation must be suppressed. We therefore affirm the trial court's order.

Order Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/2023